## PALMER *et al. vs.* SIMPSON.

[This case was argued at the last term, and the decision reserved.]

1. Where a homestead is set apart subject to a debt for purchase money, specified as being held by a certain creditor, the applicant could claim nothing as against such debt, either principal or interest, by virtue of such homestead.

2. After a homestead had been thus set apart, if the wife subsequently applied for a supplemental homestead out of the same property, as being the property of her husband, she would be estopped by his admissions made *in judicio*, and could obtain no greater exemption from such claim than could her husband, had he applied himself.

3. Where a suitor seeks to enforce an equitable cause of action on the common law side of the court, claiming a specific lien on certain property, and seeking to have a judgment or decree so moulded as to condemn such property, the mode of procedure is as in equity, so far as verdicts and decrees are concerned, and such case will not fall within the constitutional provision requiring the judge to render judgment by default without a jury on an unconditional contract in

Palmer *et al vs.* Simpson.

writing. Nor would a decree subjecting such property be void because founded on a verdict.

(*a.*) This decree was signed and entered by the court itself, and differs from the case in '55 *Ga.*, 475.

4. Where one who sold a third interest in land, and gave bond for titles therefor, endorsed the purchase money note to a third party, stating in such endorsement that he thereby assigned the note and also all his interest and rights to secure the same by virtue of the bond, the holder of such note could not pursue the statutory remedy by filing a deed, because there was no title in him. He might procure the vendor to make a deed, and then pursue his statutory remedy, but he was not bound to do so. He could go at once into equity and subject the land—the debtor having acquired the other two-thirds interest, and holding the entire title.

(*a.*) In this case the land having been sold, both under the judgment of the holder of this purchase money claim, and also under another judgment which covered the entire land, and as to which the homestead was waived, the fund in court for distribution represented the whole property.

(*b.*) No notice under §3586 of the Code was necessary in this case.

5. By her will a testatrix provided as follows (after creating a particular estate in certain property) : " At the death of my said sister, or at my death, if 1 should outlive her, I give all said property to be disposed of as follows : After the same has been duly valued by three disinterested appraisers, to be appointed by the ordinary, $2,000 shall be deducted from said valuation for the benefit of George Palmer, which I hereby give to him in said property ; when said George Palmer shall, after paying his brother Stephen one-third of the valuation thus reduced, and his brother John one-third of the valuation thus reduced, to be sole owner of the property thus willed in item 2d " :

*Held*, that under such will, after George had received two thousand dollars, the entire property was charged with the payment of the amounts due to his two brothers.

(*a.*) The legatees did not annul the scheme of division contemplated by the will, but contracted in furtherance thereof, by giving to the two brothers, John and Stephen, the notes of George for the amounts which he was to pay them respectively, and giving to him their bonds for titles upon payment of such amounts.

(*b.*) The claim of the holder of the purchase money note being superior to the homestead, and those of the other creditors being inferior thereto, the fund in court was properly awarded to him.

February 20, 1883.

Homestead. Practice in Superior Court. Equity. Estates. Wills. Constitutional Law. Vendor and Purchaser. Liens. Before F. H. COLLEY, Esq., Judge *pro hac vice.* Wilkes Superior Court. May Adjourned Term, 1882.

A house and lot, in the town of Washington, was sold by the sheriff under two *fi. fas.* against George Palmer; the first in favor of A. Franklin, the second in favor of W. W. Simpson. The money was brought into court and distributed under rule, the following claims therefor being placed in the hands of the sheriff:

(1.) The record of a homestead set apart to George Palmer, July 21, 1879.

(2.) The record of a supplemental homestead allowed to his wife, Annie M. Palmer, December 22, 1882.

(3.) A *fi. fa.* in favor of A. Franklin, against George Palmer, founded on a judgment rendered in Wilkes county court, May 19, 1879.

(4.) A *fi. fa.* in favor of W. W. Simpson against George Palmer, founded on a verdict and decree in Wilkes superior court, at the November term, 1879.

(5.) A *fi. fa.* in favor of W. O. Bohler against George Palmer, founded on a judgment rendered in Wilkes county court, February 17, 1879.

(6.) A *fi. fa.* in favor of W. O. Fortson against George Palmer, founded on a judgment rendered in Wilkes county court, December 12, 1881.

(7.) A *fi. fa.* in favor of P. H. Norton against George Palmer founded on a judgment rendered in Wilkes county court, January 9, 1882.

On the trial, the evidence in regard to the homestead and supplemental homestead was, in brief, as follows: In 1879, Palmer applied to have a homestead laid off out of the house and lot sold. The petition stated that " the said house and lot is bound and subject to a debt for the sum of $3,000, to W. W. Simpson for the purchase money,

and it is only in said land, subject to said purchase money debt, that your petitioner prays said homestead may be laid off, which interest is worth $1,000.''

The county surveyor returned that said interest was worth $1,000, and on July 21, 1879, the ordinary duly approved the application.

Personal property to the amount of $50.00 was, at the same time, set apart. The proceedings show that they were under the constitution of 1877.

The petition of Annie M. Palmer, for a supplemental homestead, recited as follows : She is the wife of George Palmer, who is the head of a family. A homestead of $1,050, has already been set apart to her husband, under the constitution of 1877. The only property owned by said George is his house and lot (the same afterwards sold), and this is subject to the following encumbrance : W. W. Simpson has title to one undivided third interest in the same, holding it as security for a debt of $3,000, which said George Palmer owes him ; and Palmer, by said judgment of the ordinary, has had set apart to him $1,000 in the same as a homestead, said homestead to attach only to the excess of the value of said property over and above $3,000. George Palmer failing and refusing to do so, his wife prays to have $550 set apart as a supplemental homestead, under the constitution of 1877, out of his said interest in the property. The same is town property, and as $550 worth thereof cannot be set aside by metes and bounds, she prays an order directing that, if said house and lot are sold, the levying officer shall, after deducting the one-third coming to Simpson and the $1,000 already set apart as a homestead in the excess of said property over $3,000, or such part of the $1,000 as such excess shall sell for, pay out of the residue $550 to the ordinary to be invested, etc.

W. W. Simpson and the other creditors were duly served, and, at the time and place of hearing, the ordinary passed the following order :

"ORDINARY'S OFFICE, December 22, 1882.

This application of Annie M. Palmer for a supplemental homestead in the property of her husband, George Palmer, is hereby approved; and it appearing that since said application was filed the house named therein was sold at sheriff's sale for $3,700; and it further appearing that the sheriff had notice of said application, and that the said $3,700 is still undistributed, it is ordered that Jno. J. Crafton, sheriff, pay over to the ordinary the sum of $550 of the $3,700, for which the house and lot sold, said $550 to be invested by some proper person selected by the ordinary in property selected by the applicant."

The claim of Simpson was supported by the record of a suit which showed, in brief, the following facts: Simpson brought an equitable action against Palmer, on the common law side of Wilkes superior court, on the note set out below. He alleged that the consideration of the note was a legacy left by Miss Mary Ann Pettus, also set out below; that George Palmer elected to take the house and lot in controversy and certain other property, and in order to secure the note which he gave to John T. Palmer, accepted a bond for titles from the latter, conditioned for the conveyance of all said John's right, title and interest in the house and lot and other property named, upon the payment of the note by said George; that the note and lien was transferred for value to Simpson; that George Palmer is insolvent and unable to pay the note without subjecting the property.

The note sued on was an ordinary promissory note, payable to John T. Palmer, or bearer, one day after date, with ten per cent. interest for $2,395.0?. On the back of this note was the following endorsement:

"I hereby endorse, transfer and assign for a valuable consideration the within note, and also all my rights and interest to secure the same contained in a bond for titles given by me to George Palmer, dated January 1st, 1875, now in possession of George Palmer, and executed to secure the payment of this note.

　　[Signed]　　.　　　　.　　　　JNO. T. PALMER.
　　*November 24, 1877.*"

The bond for titles given by John T. to George Palmer

was conditioned "to release and convey to him all my right, title and interest in and to the house and lot where said George now resides, together with the horses and carriage, wagons and harness, and all other personal property thereto belonging, my interest in said property being an undivided third interest "

The will of Miss Pettus, under which the interest of the Palmer brothers accrued, contained the following items:

"Item 2d. To my sister, Sarah Palmer, during her life, I give the house and lot, left me by my father, with all my furniture, carriage, horses, etc., (here the house and lot are described.)

"Item 3d. At my sister's death, I desire said property disposed of as follows: After the same has been duly valued by three disinterested appraisers, to be appointed by the ordinary, $2,000 shall be deducted from said valuation for the benefit of George Palmer, which I hereby give to him in said property, when said George Palmer shall, after paying his brother Stephen one-third of the valuation thus reduced, and his brother John one-third of the valuation thus reduced, be sole owner of the property thus willed in item 2d. "

Under this suit of Simpson *vs.* George Palmer, the jury found for the plaintiff a specified amount; also "that said debt is a lien on all the property contained in the third clause of the will of Mary Ann Pettus;" that the note and lien had been transferred to Simpson, and that the lot be sold to pay Simpson's claim. On this verdict was entered the following decree: "Let the above stated finding of the jury be the decree of this court, and it is so ordered." A *fi. fa.* was issued and levied on the lot.

A deed was introduced from Stephen R. Palmer to George Palmer, dated June 1st, 1876, which recites that a note had been given to him similar to that given to John T. Palmer, and that it having been paid, said Stephen R. conveyed his undivided one-third interest to said George.

The following facts appeared from the admissions of the parties. Mrs. Palmer, the life tenant, died subsequently to January 1st, 1875. The property named in item 2d of the will of Miss Pettus was appraised as follows: The house and lot at $7,400.00, the furniture at $1,785.00, the

"wood lot" at $1,125.00. On January 1st, 1875, the wood lot was sold and the proceeds equally divided between George, Stephen and John T. Palmer. Another *fi. fa.* held by Franklin, issued from the superior court, under which, in part, the sale took place, and which has been paid off, was founded on a note containing a valid waiver of the homestead.

The case was submitted to the court without a jury. He ordered $3,045 00 of the fund to be paid to Simpson. The other contestants excepted.

W. M. & M. P. REESE ; HARDEMAN & IRVIN, for plaintiff in error.

R. TOOMBS ; JOHN A. STEPHENS, for defendant.

JACKSON, Chief Justice.

This case arose on a money rule to distribute a fund in court. The contestants were Simpson, the defendant in error, various judgment creditors, and the defendant in execution and his wife, who claimed part of the fund under homestead set apart to them, plaintiffs in error.

1. In respect to the homestead claim of defendant in execution, it is enough to say that the homestead is set apart subject to the purchase money rights now in the hands of Simpson. Therefore, he can claim nothing against Simpson. Of course the exception of this purchase money included interest as well as principal, and embraced the entire claim of the defendant in error.

2. The wife applied for supplemental homestead out of the same property, the defendant himself having secured it only for $1,050.00. She only applies for homestead out of his property in his stead ; and when she does apply for it in that character, she is estopped by his admission, made *in judicio*, and certainly could get no more money exempted than could he, if he himself had applied. It would be queer, if, when he would not apply, because

bound by his admissions not to do so, or because too honest to do so, or for any other reason satisfactory to himself, she became entitled to apply for and get, not only what he could have gotten, but more. If such were the law, the husband and father would always decline to apply, and substitute his wife as his agent, the agent getting and recovering more than the principal could possibly recover. Strange law, strange construction of the law !

The conclusion must be, that as respects these homesteads, Simpson must recover as much money as his claim calls for, or rather as his judgment entitles him to, if a valid judgment.

3. Is that judgment void because founded on a verdict of a jury? The action of Simpson against the defendant, Palmer, is equitable. The remedy, it is true, which he sought is, in form, at law ; but the relief is purely equitable. The judgment is not, in strictness, a judgment at law, but in equity. It gives a specific lien on certain specific property, and is so moulded as to give this specific final decree condemning this property to pay the debt, if enough, and if not sufficient, then to operate as a general judgment. The pleader evidently proceeded under §3082 of the Code, which enacts that "no suitor, however, is compelled to appear on the equity side of the court ; but he may institute his proceedings for an equitable cause of action upon the common law side of the court at his option, and the court may allow the jury to find a verdict, and a judgment be rendered thereon, so moulded and framed to give equitable relief in the case, as verdicts and decrees are rendered and framed in equitable proceeding. "

It was not the intention of the framers of the constitution to annul this statute ; yet it would be annulled if juries were excluded. The proceeding is to be as in equity. The language is, "as verdicts and decrees are rendered and framed in equity proceeding." So the mode of procedure is as in equity, so far as verdicts and decrees are concerned. In equity, a verdict would be rendered, and it would be constitu-

tional, because it has been decided not to be within the provision of the constitution requiring the judge to render judgment without a jury on an unconditional contract in writing. 58 *Ga.*, 457. This being a suit at law upon an equitable right to have it enforced as in equity, to have the verdict and judgment as in equity, to be moulded and framed to suit the equitable relief asked, as in equity, we think that it should stand on the same platform as equity cases, and that the judgment or decree is not void because a verdict was rendered.

Let it be noted that the decree here, or the judgment, is that of the judge. It is signed and entered by the court itself. It is not a judgment entered on a verdict by counsel, as in 55 *Ga.*, 475, and following cases. The court here did pass on the case and enter the decree.

At all events, it is substantially an equitable proceeding, and should be ranked with such proceedings, as not embraced within the constitutional provision as to civil cases triable without a jury.

Therefore, this judgment or decree fixes the lien of Simpson upon all this property, so far as defendant in *fi. fa.* and those in privity with him are concerned. It binds the whole land, and excludes their homestead from operating upon any part of it.

4. It is insisted, however, that the fund in court does not represent all the land, but two-thirds, because Simpson is a vendor and has not pursued his remedy as to one-third (Code, 3654), and no part of this fund represents that third because not sold. It is true that he did buy the note of John Palmer on his brother, the defendant in execution, and took the note with this endorsement thereon: " I hereby endorse, transfer and assign for value, the within note, and also my interest and rights to secure the same, contained in a bond for titles given by me to George Palmer, and executed to secure the payment of this note." The bond is a bond for titles to George Palmer when he pays off the note.

But it must be borne in mind that Simpson is not the vendor, and could not pursue the statutory remedy under Code, §3654, because he could not make the deed.   True, if the vendor to him had made, or would make it, he might pursue that remedy.  56 *Ga.,* 165.   But is he bound to go to him?   Can he not go at once into equity?   He did so, and thus subjected all the land.   It was sold under his execution, and another execution, Franklin's, which also was founded on a contract which waived homestead. So that the fund represented all the land.   The land was sold under Franklin's *fi. fa.,* which covered all, and under Simpson's, which even in the view of counsel for plaintiff in error covered, if the court had jurisdiction to render judgment on a verdict, one-third; for surely his lien is good for that.   No notice under 3586 of the Code was necessary in this case; for Simpson knew all about it and thought all was sold, and so did Franklin.   So that the fund is in the place of all the land.   All the land was sold, and the question is, who is entitled to the fund?

5. Unquestionably, under the will of Miss Pettus, all the land was charged with the share due to John Palmer; that share was represented by the note sold to Simpson, and under the will, Simpson's debt is a charge on all the land, and so the decree was rendered.   But it is argued that the three brothers changed their rights under the will, and made a contract between themselves, and thereby the two brothers sold out their shares to one-third of the land each, to George, the defendant in execution, and he took their bond for titles to the land ; and thus they relinquished the charge on all the land which they had under the will to secure their interest, and took in lieu of it one third of the value of the land, secured only by a statutory vendor's lien, with bond for titles, for that third. Reading and construing all they did in the light of all the facts, we do not think that such was the contract.   The defendant certainly did not so think; for he applied for homestead out of all the land, and said in his petition that

all was subject to Simpson's claim.    Simpson, who bought from John, did not so construe what was done; for he sued for and got a decree subjecting all of the land.    The superior court which passed upon the suit of Simpson, and adjudicated his claim against defendant, did not so understand it; for it decreed that Simpson had a lien on all. The agreement does not show any division of the land, but only an estimate from the appraisement of the sum due each, and as by the will the land was charged, all of it, with what was due each of the two, by George, the de-defendant, he gave his notes therefor, and in order to secure himself he took their bond for titles to be made when he paid them.    That bond was really no additional security to the brothers, to Stephen or to John, or to John's vendee, Simpson.    The land, the whole property, was their security for the bequest which their aunt left them.    It was the purchase money for the entire property, which George was to pay Stephen and John before he got title to it or any of it.    True, he was to receive two thousand dollars, first of all, the first charge upon it all, then he was to pay each of them one-third of the value of what remained ; then, and not till then, the entire property by the will was vested in him, and he got title thereto free from all charges and encumbrances.    So that the scheme, or arrangement, or contract between the brothers, was but in furtherance of the will, made to carry out its true intent and spirit. This arrangement has to be gathered piece-meal.    It nowhere appears as an entirety, all in one place, so as to be read and construed at one glance ; but we gather the fragments together, and from them we make out the contract or arrangement as best we may ; for unquestionably there was an arrangement among the brothers made to suit George.    Probably the carriage and horses, furniture, etc., the personalty, swallowed up his two thousand dollars, or in some way that was allowed him.    Then the wood lot was sold and divided.    Then these two notes were given on ten per cent. time to suit him.    He paid that to

Stephen, but was unable to pay John. He wanted his money which his aunt left him, and sold his claim to Simpson, transferring the note and his bond to make titles to his third interest, also to Simpson as security additional to it, as was doubtless thought, but by no means in extinguishment of the original lien. Nothing is said about doing away with the will. No scintilla of testimony is offered to that effect. Had it been in existence, it would have been produced. It was not produced. In the absence of it, it ought not to be presumed; for it would have parted with a lien on all the property for one on a third of it. We construe this arrangement, as we collect it from these scattered pieces, not as a novation (a strange thing, by the way, to graft on a will), a contract in annihilation of the will, an agreement to set it aside, but as an arrangement to carry it out to suit the several positions and wishes of the three legatees of this estate. The defendant in execution simply gave, in addition to the remedy already in the hands of his brothers, a recognition of their title to one-third undivided interest in the property, by accepting from them a bond for titles thereto, while he at the same time secured for himself perfect title, free of incumbrances to all the land whenever he paid them. This carried out the will. He was to have the title when he paid them, by the will. He was to have the title when he paid them, by this arrangement. In both cases, he had first to pay them. The will indicated no time or mode. The agreement gave time by providing for ten per cent. interest until paid, and was the machinery used to carry into effect the will.

Thus we come to the conclusion, that the judgment of the court below, in awarding the money to Simpson in accordance with his decree to collect it out of this land, is right—right as against the defendant and his privies in estate, because they are concluded by it and recognized it, or the claim on which it is founded, as superior to homestead, in that it was purchase money; and right as against the judgment creditors contesting with him, because the

decree, fastening his lien on the land in a higher place than the homestead, could take the money, while their's were inferior to the homestead and inferior to the decree. 63 *Ga.*, 296 ; 64 *Ib.*, 365.

Judgment affirmed.