THOMAS *v.* AMERICAN FREEHOLD LAND & MORTGAGE CO. OF LONDON,
Limited.

(*Circuit Court, S. D. Georgia, N. E. D.* July 16, 1891.)

1. ACTION ON NOTE—LIEN—FEDERAL JURISDICTION.
    Code Ga. § 1970, provides that, when judgment shall be rendered upon a note secured by a conveyance of land, the grantee may file and have recorded a deed of the land to the defendant, whereupon the land may be sold to satisfy such judgment, which shall have priority over all other judgments against the defendant. *Held*, that a proceeding to obtain judgment on such a note, and to have the same declared a prior lien on the land, was not cognizable in a federal court of law. Following *Mortgage Security Co.* v. *Gay*, 33 Fed. Rep. 636.

2. JUDGMENT—SETTING ASIDE AFTER TERM.
    Such a judgment, when rendered by a court of law, being a nullity, may be set aside by the court on motion, even at a subsequent term.

3. SAME—JURY TRIAL—CONDITIONAL CONTRACT.
    A note which provides that on failure to pay interest within 30 days after due the holder of the note may declare the principal due, is not an unconditional contract within the meaning of Code Ga. § 5145, which declares that the court shall render judgment without the verdict of a jury in all civil cases founded on unconditional contracts in writing, where there is no verified answer.

At Law. Motion to vacate judgment and execution of the court and sales made thereunder.

*Frank H. Miller*, for the motion.

*William E. Simmons*, opposed.

SPEER, J. The American Freehold Land & Mortgage Company of London, Limited, brought suit in this court against J. Pinckney Thomas, a citizen of this district, for the sum of $5,816.66 on a certain promissory note, which reads as follows:

"$5,000.00.                              WAYNESBORO, GA., January 13, 1883.

"On the first day of December, 1887, I promise to pay J. K. O. Sherwood, or order, at the office of the Corbin Banking Company, New York city, $5,000.00. with interest from this date at the rate of eight per cent. per annum, payable annually, as per five notes herewith attached. Value received. * * * Should any of said interest not be paid when due, it shall bear interest at the rate of eight per cent. per annum from maturity, as stipulated in said interest notes: and upon failure to pay any of said interest within thirty days after due, said principal sum may, at the option of the holder of this note, be declared due, without notice, and may thereupon be collected at once, time being of the essence of this contract; and, in case this note is collected by suit, I agree to pay all costs of collection, including ten per cent. of the principal and interest as attorney's fees.

[Signed]                                 "J. PINCKNEY THOMAS. 3977.
"No. 32,220."

Indorsed: "Without recourse. J. K. O. SHERWOOD."

Copies of the interest notes are attached. On the 9th day of April, 1888, the following judgment by default was taken:

"There being no defense filed on oath in this case, judgment is rendered by the court for the plaintiff *vs.* the defendant for $5,000.00 as principal, $990.47 as interest to this date, $599.04 attorney's fees, and $11.35 for cost of suit, to be taxed by the clerk, this 9th day of April, 1888.

[Signed]                                 "EMORY SPEER, Judge."

After said judgment was rendered by the court, without having sub-mitted the case or any evidence therein to a jury, Mr. Fred Lockhart, the plaintiff's attorney, entered a judgment, signing the same, as attor-ney, for the principal, interest, and attorney's fees, to be levied upon the land, tenements, and hereditaments of the defendant, and especially upon 1,150 acres, more or less, in Burke county, Ga. Then followed a description, the boundaries being given, of the land. Execution was issued in accordance with the judgment last above mentioned. The marshal was commanded to levy generally upon the lands, etc., of the defendant, and especially upon the 1,150 acres described in the judg-ment entered by the plaintiff's attorney. On the 4th day of December, 1888, this property was sold by the marshal in the usual manner of marshal's sales, and was bought in by William C. Wheeler for the sum of $431.36, and the marshal's deed made in pursuance of said sale. On the 6th of August, 1890, Turner C. Thomas, the administrator of J. Pinckney Thomas, made a motion in writing, giving notice thereof to the plaintiff in the original suit, to vacate the award and judgment, the execution issued thereon, and the sale made in pursuance thereof; and also asked for leave to file the pleas described in the motion. The grounds of the motion which it is important to consider for the purposes of this decision, are as follows: (1) That the defendant, J. Pinckney Thomas, died prior to the final adjournment of the term of court at which the judgment by the court was entered, and that no representative was appointed for the estate until the 5th day of April, 1890. (2) That the award granted April 9, 1888, was granted without jurisdiction, because suit was brought upon a conditional contract, and the verdict of a jury was required before judgment could be lawfully entered. (3) Because the judgment entered on the award does not conform to the pleadings in the case, nor to the award of the court. (4) Motion is made to set aside the execution, because it did not conform to the award of the court, and was issued to enforce a special lien only. (5) To vacate the sale, be-cause Wheeler, the purchaser, was an officer of the plaintiff, who acted for and in its behalf; and that the sale, under the circumstances as dis-closed by the record, and the deed pursuant to the sale, made by the marshal to said Wheeler, amounted to "chilling" the bid by the plaintiff in *fi. fa.* Plaintiff made application to be permitted to file pleas to the jurisdiction of the court, and to the effect that the note so sued on was actually given for a loan of $4,000, though nominally for $5,000, $1,000 being retained by the payee at the time of giving the note and making the loan, and was therefore usurious. There were other grounds upon which it was sought to vacate the judgment, execution, levy, and sale, which appear in the record. The American Freehold Mortgage Com-pany of London, Limited, transferee of the contract, and the plaintiff in the original suit, objects to the motion above set forth upon the fol-lowing material grounds, and others which appear in the record: (1) Because, after a circuit court has adjourned without a day, it cannot set aside any of its own judgments on motion, such judgments being bind-

ing until reversed for error. (2) The grounds of the motion ought to have been urged before judgment; and the movant, being in laches, cannot be heard now. (3) Because it appears from the pleadings that the court had jurisdiction, and it is too late now to deny it. (4) Because sale under an execution cannot be set aside after the consummation and distribution of the proceeds thereof. (5) Because the pleas ought to have been filed before the rendition of the judgment.

The constitution of the state of Georgia (section 4, par. 7; Code, § 5145) provides:

"A court shall render judgment without the verdict of a jury in all civil cases founded on unconditional contracts in writing where an issuable defense is not filed under oath or affirmation."

The plaintiff's attorney taking the judgment in this case followed the practice of the state courts, and took his judgment in conformity with the rule of the superior courts of the state, No. 39; a rule adopted in consonance with the clause of said constitution quoted above. Two important questions depending upon this action have been evoked by the motion: Does the jurisdiction in this court to give the judgment affirmatively appear in the record? Is the judgment void, in view of the law of the state, because it was rendered, not upon an unconditional, but upon a conditional, contract in writing, as insisted by the movant? The cause was pending at law, and it is insisted by the movant that the judgment granted was tantamount to the foreclosure and enforcement of an equitable lien in the nature of a mortgage, to do which is not within the jurisdiction of a law court of the United States, but is the exercise of a power belonging to a court of equity. The lien in question is created by sections 1969 and 1970 of the Code of Georgia, which provides as follows:

"Sec. 1969. Whenever any person in this state conveys any real property by deed to secure any debt to any person loaning or advancing said vendor any money, or to secure any other debt, and shall take a bond for titles back to said vendor upon the payment of such debt or debts, or shall in like manner convey any personal property by bill of sale, and take an obligation binding the person to whom said property was conveyed to reconvey said property upon the payment of said debt or debts, such conveyance of real or personal property shall pass title of said property to the vendee, provided that the consent of the wife has been first obtained, till the debt or debts which said conveyance was made to secure shall be fully paid, and shall be held by the courts of this state to be an absolute conveyance, with the right reserved by the vendor to have said property reconveyed to him upon the payment of the debt or debts intended to be secured agreeably to the terms of the contract, and not a mortgage.

"Sec. 1970. When any judgment shall be rendered in any of the courts of this state upon a note or other evidence of debt which such conveyance of realty was made and intended to secure, it shall and may be lawful for the vendee to make and file, and have recorded in the clerk's office of the superior court of the county wherein the land lies, a good and sufficient deed of conveyance to the defendant for said land; and, if the said obligor be dead, then his executor or administrator may in like manner make and file such deed without obtaining an order of the court for that purpose, whereupon the same

may be levied on and sold under said judgment, as in other cases: provided, that the said judgment shall take lien upon the land prior to any other judgment or incumbrance against the defendant."

It will be observed that the machinery provided by these statutes belongs to the state courts, where there are no distinctions between the practice and procedure at law and in equity. And it is urged by the movant that the proceeding on the part of the plaintiff in the suit at common law, to have defined and enforced the lien provided by the sections of the Code above quoted, presents a matter not within the jurisdiction of the circuit court sitting as a court of law. That proposition was held to be true by this court in the case of *Mortgage Security Co.* v. *Gay*, 33 Fed. Rep. 636, and after a more careful consideration of the authorities in the recent case, decided at this term, of *Alexander* v. *Mortgage Co.*, 47 Fed. Rep. 131. The judgments of a court of law usually take rank and effect in accordance with the date when they were rendered or granted. The judgments provided for by the special statutes above quoted take effect from the date of the contract between the parties. The contract, moreover, is in itself the creation of an equitable lien, where certain rights are reserved to the debtor, and certain privileges given to the creditor. In the case of *Fenn* v. *Holme*, 21 How. 484–487, will be found a condensed statement of the leading cases in the earlier volumes of the United States Supreme Court Reports upon this doctrine. They all sustain the following announcement made in that case for the court by Mr. Justice DANIEL:

"By the constitution of the United States, and by the acts of congress organizing the federal courts, and defining and investing the jurisdiction of these tribunals, the distinction between common-law and equity jurisdiction has been explicitly declared and carefully defined and established. Thus, in section 2, article 3, of the constitution, it is declared that ' the judicial power of the United States shall extend to all cases in law and equity arising under this constitution, the laws of the United States,' etc. In the act of congress 'to establish the judicial courts of the United States' this distribution of law and equity powers is frequently referred to; and by the sixteenth section of that act, as if to place the distinction between these powers beyond misapprehension, it is provided 'that suits in equity shall not be maintained in either of the courts of the United States in any case where plain, adequate, and complete remedy may be had at law,' at the same time affirming and separating the two classes or sources of judicial authority. In every instance in which this court has expounded the phrases, ' proceedings at the common law, and proceedings in equity,' with reference to the exercise of judicial powers of the courts of the United States, they will be found to have interpreted the former as signifying the application of the definitions and principles and rules of the common law to rights and obligations essentially legal, and the latter as meaning the administration with reference to equitable, as contradistinguished from legal, rights of the equity law, as defined and enforced by the court of chancery in England."

See, also, *Busey* v. *Gallagher*, 20 Wall. 680; *Bacon* v. *Howard*, 20 How. 22; *Bennett* v. *Butterworth*, 11 How. 675.

In the case last cited, as in the case now under consideration, there was nothing in the proceeding which resembled a bill or answer in equity, according to the rules prescribed by this court; nor any evidence stated

upon which a decree in equity could be revised in an appellate court. In the case now under consideration there was no averment or prayer which authorized the court to give anything save an ordinary judgment at common law; and, as held in the case of *Bennett* v. *Butterworth, supra,* the error is patent upon the record, and is open to correction without motion in arrest of judgment, or exception taken at the trial. To the argument that this court may adopt the remedy granted by the statute of the state of Georgia, and enforce it, as do the courts of that state at common law, a sufficient reply is found in the language used by Mr. Justice MILLER in the case of *Van Norden* v. *Morton,* 99 U. S. 380:

"We think the rule is settled in this court that, whenever a new right is granted by statute, or a new remedy for violation of an old right, or whenever such rights and remedies are dependent on state statutes or acts of congress, the jurisdiction of such cases, as between the law side and the equity side of the federal courts, must be determined by the essential character of the case; and unless it comes within some of the recognized heads of equitable jurisdiction, it must be held to belong to the other;" citing the cases of *Thompson* v. *Railroad Co.,* 6 Wall. 134; *Robinson* v. *Campbell,* 3 Wheat. 212; *Basey* v. *Gallagher,* 20 Wall. 680; *Bennett* v. *Butterworth,* 11 How. 669; and *Jones* v. *McMasters,* 20 How. 8.

It is suggested that by the law of Georgia the equity of redemption of a mortgage may be sold under a judgment had upon the note which the mortgage is given to secure, without proceeding to foreclose the mortgage, and that this would as effectually conclude the movant here as if the mortgage itself had been properly foreclosed. It does not appear that this can be justified in a court of the United States in view of the important principle discussed and settled by the authorities last above quoted. The case of *Willard* v. *Wood,* 135 U. S. 309–314, 10 Sup. Ct. Rep. 831, is instructive in this connection. That was an action brought in the supreme court of the District of Columbia by a mortgagee against the representatives of one who had bought the mortgaged lands "subject to the mortgage," and who had assumed to pay, satisfy, and discharge the mortgage debt. Judgment was rendered for the defendant upon an agreed statement of facts, and error was assigned upon that judgment. The supreme court of the United States, Mr. Justice GRAY, rendering the opinion, after reciting the fact that the contract in question was made in New York, where the mortgagee is entitled to maintain a suit either in equity or at law against the grantee of the mortgagor to enforce the payment of the mortgage debt, held that the form of the plaintiff's remedy, "whether it must be in covenant or in *assumpsit,* at law or in equity, is governed by the *lex fori,*—the law of the District of Columbia, where the action was brought. *Dixon* v. *Ramsay,* 3 Cranch, 319, 324; *Bank* v. *Donnally,* 8 Pet. 361; *Wilcox* v. *Hunt,* 13 Pet. 378; *Le Roy* v. *Beard,* 8 How. 451; *Pritchard* v. *Norton,* 106 U. S. 124, 130, 133, 1 Sup. Ct. Rep. 102." "In the supreme court of the District of Columbia," continues the learned justice, "as in the circuit court of the United States, the jurisdiction in equity is distinct from the jurisdiction at law, and equitable relief cannot be granted in an action at law;" citing *Fenn* v. *Holme,* 21 How. 481. "A statement of facts agreed by the parties, or,

technically speaking, a case stated in an action at law, doubtless waives all questions of pleading or of form of action which might have been cured by amendment; but it cannot enable a court of law to assume the jurisdiction of a court of equity;" citing *Scudder* v. *Worster*, 11 Cush. 573; *McRae* v. *Locke*, 114 Mass. 96; *West Roxbury* v. *Minot*, Id. 546. The case at bar, while not identical with, is strongly analogous to, *Willard* v. *Wood*. The suit was brought by a transferee of the note and of the security for it, a deed or mortgage, which the proceeding was intended to enforce. There was no privity whatever between the original maker of the note and the transferee. The transferee was not under legal obligation to reconvey the land to the maker of the note upon payment of the debt. In fact the transferee had no title or deed to the land made by the maker of the note to secure the debt, and J. K. O. Sherwood's only conveyance of the note to the plaintiff in the action was an ordinary transfer without recourse on him. When J. K. O. Sherwood, without indorsement or guaranty from himself, transferred the note given by J. Pinckney Thomas, it is presumed that it was transferred for value, and that his rights as against the maker were satisfied; and, it being presumable, in the absence of indorsement or guaranty, that his interest in the note was paid off and discharged, Thomas would seem entitled to a reconveyance of the land from him, and the transferee of the note—who is the plaintiff here—to the lien of an ordinary judgment merely. *Neal* v. *Murphey*, 60 Ga. 388; *Tompkins* v. *Williams*, 19 Ga. 569; *McGregor* v. *Mathis*, 32 Ga. 417. In the case of *Palmer* v. *Simpson*, 69 Ga. 792, a proceeding to enforce a specific lien on certain specified property in an action at law was held to be equitable in its character, and that the mode of procedure should be as in equity. In the same case (page 795) the supreme court of the state uses this language:

"It must be borne in mind that Simpson is not the vendor, and could not pursue the statutory remedy under Code, § 3654, because he could not make the deed. True, if the vendor to him made the deed, or would make it, he might pursue that remedy. *Scroggins* v. *Hoadley*, 56 Ga. 165. But is he bound to go to him? Can he not go at once into equity? He did so, and thus subjected all the land."

In the case of *Hunt* v. *Harbor*, 80 Ga. 748, 6 S. E. Rep. 596, the supreme court of the state held that, when the vendor of land transferred the purchase-money notes without indorsement or guaranty of payment thereof, the money due from the purchaser of the land to the vendor was paid, and the purchaser of the notes is put in the attitude of an ordinary creditor, and has no specific lien upon the land, such as is created by the state statute upon the subject. The conclusion which the court reaches after considering these authorities is that the plaintiff, having accepted the notes sued on without the conveyance from the maker of the land given to secure the amount due thereon, and without indorsement or guaranty, is merely an ordinary creditor of the maker of the note, and is not entitled, in a court of law, to enforce the special lien under which the land was sold. *Scroggins* v. *Hoadley*, 56 Ga. 165. See, also, *Bank* v. *Prater*, 64 Ga. 609. It is true that Sherwood, the payee of the

note, made a deed to the American Freehold Land & Mortgage Company, and gave warranty of title to the land conveyed to secure the debt against all persons claiming under himself, but against no one else,—a quitclaim deed. This deed contained also this additional clause: "This conveyance is made subject to the rights of J. Pinckney Thomas, of the county of Burke, state of Georgia, to have said property reconveyed to him, his heirs, etc., upon the terms and conditions set out in my bond to him," etc. It is also true that the mortgage company attempted to file a deed of reconveyance of the land in question in the clerk's office of the superior court of Burke county. This, however, is assailed by the movant as invalid, and the question still remains, can the court at common law, without equitable powers, adjust the equities which may arise? Certainly the mortgage company is not legally bound to comply with the obligation of Sherwood's bond for title, to reconvey on payment, but they are equitably. To enforce, then, a contract of this character, and at the same time so to mould a verdict or a decree as to protect the rights of the contracting parties, is clearly within the domain of equity, and not within the totally separate and distinct jurisdiction of a United States court of law. So far, therefore, as the judgment creates a specific lien upon the property described in it, other than the ordinary judgment at law, it is a judgment upon a matter of which court had no jurisdiction. The defendants insist, however, that the term having ended, we have no control over this judgment. The numerous authorities cited by the attorney for the defendant, to-wit, *Bank* v. *Moss*, 6 How. 31; *Sibbald* v. *U. S.*, 12 Pet. 492; *Cameron* v. *McRoberts*, 3 Wheat. 591; *U. S.* v. *Bank*, 6 Pet. 8,—wherein it is held that, after a circuit court has adjourned without a day, it cannot set aside one of its own judgments upon motion, even for want of jurisdiction over the cause, were all decided upon cases where the court itself did not exceed its jurisdiction. It is true, however, that even where the court has jurisdiction of the parties and subject-matter, if it makes a judgment or decree which is not within the power granted to it by the law of its organization its decree or judgment is void.

In the case of *U. S.* v. *Walker*, 109 U. S. 258, 3 Sup. Ct. Rep. 277, (decision by Mr. Justice WOODS for the court,) will be found a condensed statement of the authorities upon this proposition. The decree under review in that case was made by the supreme court of the District of Columbia, and the statute in question gave the court power on removal of an executor or administrator to order the assets of the decedent which might remain unadministered to be delivered to the administrator *de bonis non*. The court, however, had made an order directing the delivery of the proceeds arising from administered assets of the estate to the administrator *de bonis non*. This order was attacked as void, because not within the power granted the court by the statute under which it was acting.

"It appears from the pleadings in the case," said the learned justice, "that the money ordered to be paid was the proceeds of a debt due the decedent which his administratrix had collected. It was not, therefore, as we have seen, assets or estate of the decedent. It was the property of the removed

administrator. The court was therefore without power to direct the payment of the money to the administrator *de bonis non.*  Although a court may have jurisdiction over the parties and the subject-matter, yet if it makes a decree which is not within the powers granted to it by the law of its organization its decree is void.  The limitation was well expressed by Mr. Justice SWAYNE in *Cornett* v. *Williams*, 20 Wall. 226, when he said:  'The jurisdiction having attached in this case, everything done within the power of that jurisdiction, when collaterally questioned, is held conclusive of the rights of the parties, unless impeached for fraud.'  The case of *Bigelow* v. *Forrest*, 9 Wall. 339, is in point.  It was an action of ejectment.  Bigelow, who was defendant in the court below, relied for title on a sale made under a decree of the United States district court rendered in a proceeding for the confiscation of the premises sued for under the act of July 17, 1862.  Referring to this decree Mr. Justice STRONG, speaking for this court, said:  'Doubtless a decree of a court having jurisdiction to make the decree cannot be collaterally impeached, but under the act of congress the district court had no power to order a sale which should confer on the purchaser rights outlasting the life of French Forrest.'  And the judgment of the court was that so much of the decree of the district court as was in excess of its power was void.  In *Ex parte Lange*, 18 Wall. 163, Mr. Justice MILLER, delivering the opinion of the court, after stating that the circuit court had exceeded its authority in pronouncing sentence upon Lange, and that its judgment was therefore void, said:  'It is no answer to this to say that the court had jurisdiction of the person of the prisoner and of the offense under the statute.  It by no means follows that these two facts make valid, however erroneous it may be, any judgment the court may render in such case.'  In the case of *Windsor* v. *McVeigh*, 93 U. S. 274, Mr. Justice FIELD, after a review of the cases bearing upon this subject, announces their result as follows:  'The doctrine invoked by counsel, that when a court has once acquired jurisdiction it has a right to decide every question which arises in the case, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but is subject to many qualifications in its application.  It is only correct when the court proceeds, after acquiring jurisdiction of the cause, according to established modes governing the class to which the case belongs, and does not transcend in the extent or character of its judgment the law which is applicable to it.'"

On page 282 the learned justice adds:

"Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments.  It must act judicially in all things, and cannot then trascend the power conferred by the law.  If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant.  If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract.  If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will.  Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications.  The judgments mentioned given in the case supposed would not be merely erroneous; they would be absolutely void; because the court rendering them would transcend the limits of its authority in those cases."

The learned justice continues:

"A departure from an established mode of procedure will often render the judgment void; thus the sentence of a person charged with felony, upon conviction by the court without the intervention of a jury, would be invalid for

any purpose. The decree of a court of equity upon oral allegations without written pleadings would be an idle act, of no force beyond that of an advisory proceeding of the chancellor; and the reason is that the courts are not authorized to exert their power in that way."

If the judgments of a court in the cases above cited are void when attacked collaterally, *a fortiori* will they be void as affecting the parties to the cause in which they were rendered, and upon a motion to vacate them. It follows, we think, conclusively, that the court, having been advised that what purports to be its judgment is a nullity, will remove the ineffectual entry from the record of its proceedings. As we have seen, the judgment of the court at law attempting to define and enforce the statutory lien of the creditor in Georgia to the realty conveyed to secure his debt is deemed to be a proceeding in equity, and not appropriate to the modes of procedure at law. The case of *Mellen* v. *Iron Works*, 131 U. S. 367, 9 Sup. Ct. Rep. 781, would seem at first glance opposed to this view. It was there held, Mr. Justice HARLAN delivering the opinion of the court, that "an adjudication that a particular case is of equitable jurisdiction is not void, even if erroneous, and cannot be disturbed by a collateral attack." There, however, was an adjudication that the court had equitable powers. If it had them not, it yet had the right to decide that question. That decision was valid and operative until set aside for error. There was, in other words, a regular adjudication of the court that it had jurisdiction. That is very different from a case like that before the court here, when no such question was presented or decided, and where the court, on motion of the plaintiff's attorney, proceeded to exercise powers which were expressly withheld from it in the laws by which it was organized.

We have heretofore been considering the judgment signed by the plaintiff's attorney to enforce the special statutory lien on the land pledged for the debt. We may next inquire whether the judgment rendered by the court in this case is void by the law of Georgia. This provides, (Code, § 3594:)

"The judgment of a court having no jurisdiction of the person and subject-matter, or void for any other cause, is a mere nullity, and may be so held in any court when it becomes material to the interest of the parties to consider it."

And, further, (Code, § 3828:)

"A judgment that is void may be attacked in any court and by anybody. In all other cases judgments cannot be impeached collaterally, but must be set aside by the court rendering them."

See, also, *Ponce* v. *Underwood*, 55 Ga. 601, decision by Judge WARNER, where it is held:

"When a court transcends the limits prescribed for it by law, and assumes to act where it has no jurisdiction, its adjudications will be utterly void, either as estoppel or otherwise. Herm. Estop. 45."

It is true that in this case the court gave the judgment without the intervention of a jury. Because of the seventh amendment of the constitution of the United States, and the acts of congress embraced in sec-

tions 648 and 649 of the Revised Statutes, this would be manifestly a nullity, unless the constitution and laws of Georgia will authorize it. In this connection it will be instructive to consider *Barney* v. *Schmeider*, 9 Wall. 251, 252; *Flanders* v. *Tweed*, Id. 425; *Baylis* v. *Insurance Co.*, 113 U. S. 320, 5 Sup. Ct. Rep. 494; *Kearney* v. *Case*, 12 Wall. 281. It will be observed that the defendant in the original suit did not waive his right to have the facts tried by a jury. In the case of *Barney* v. *Schmeider*, *supra*, Mr. Justice MILLER observed:

"It is insisted with much ingenuity that in this case there was no disputed fact for the jury to pass upon, and that, the only issue in the case being one of law, it was proper for the court to dispose of it. If this were so, the instruction of the court might be sustained, provided the undisputed facts necessary to sustain the verdict had been submitted to the jury."

In *Hodges* v. *Easton*, 106 U. S. 408, 1 Sup. Ct. Rep. 307, Mr. Justice HARLAN, in rendering the decision of the court, observed:

"It was the province of the jury to pass upon the issues of fact, and the right of the defendants to have this done was secured by the constitution of the United States. They might have waived that right, but it could not be taken away by the court. Upon the trial, if all the facts essential to a recovery were undisputed, or if they so conclusively established the cause of action as to have authorized the withdrawal of the case altogether from the jury by a peremptory instruction to find for the plaintiffs, it would still have been necessary that the jury make its verdict, albeit in conformity with the order of the court. The court could not, consistently with the constitutional right of trial by jury, submit a part of the facts to the jury, and itself determine the remainder, without a waiver by the defendant of a verdict by the jury."

The right of trial by jury in the courts of the United States is guarded with great jealousy by those courts; and, while it is true that the seventh amendment of the constitution, preservative of this right, does not relate to state action or state courts, it is at least patent that, if the award in this case made by the court without the intervention of a jury is not sustained by the law of the state, it is not sustainable at all.

The constitution of the state of Georgia, § 4, (par. 7, Code, § 5145,) as we have seen, provides as follows:

"The court shall render judgment without the verdict of a jury in all civil cases founded on unconditional contracts in writing, where an issuable defense is not filed under oath or affirmation."

It is interesting to consider whether this section is under any circumstances operative in the courts of law of the United States. Assuming, however, for the purposes of this case, that it does authorize a United States judge to render judgment under circumstances where the judge of a state court might do so, certainly it would not do so otherwise. Is the contract upon which the suit is brought and judgment obtained in this case an "unconditional contract." It contains, among others, this stipulation:

"Should any of said interest not be paid when due, it shall bear interest at the rate of eight per cent. per annum from maturity, as stipulated in said interest notes; and upon failure to pay any of said interest within thirty days after due, said principal sum may, at the option of the holder of this note, be declared due without notice, and may thereupon be collected at once."

Now, it is quite evident that, while the coupon interest notes in the possession of the plaintiff were *prima facie* evidence that the interest had not been paid, yet before the plaintiff was entitled to have the entire sum of the debt declared to be due he must show by proof that the borrower failed to pay the interest installment within "thirty days" after it was due. · This is a condition precedent to the right of the plaintiff to declare the entire sum due at once, an option of which he availed himself in bringing the suit. It was, moreover, necessary to the jurisdiction of the court to establish by proof the fact that the interest was not paid within 30 days after it was due. It will be perceived from an examination of the record that the principal sum was not due until the 1st day of December, 1887, and judgment for the whole amount was taken the 16th of July, 1887; and at the time the suit was brought the only indebtedness past due amounted to $816.66, a sum less than the minimum jurisdictional amount of the court. · The proof to establish the fact that the interest had not been paid within 30 days—a fact upon which such an important condition depended—should, by the laws of Georgia, properly have been submitted to a jury, even though, in the language of the constitution of the state, there was no issuable defense filed under oath or affirmation. The supreme court of Georgia, in *Dye* v. *Garrett*, 78 Ga. 471, 3 S. E. Rep. 692, had this question before it upon these facts. Suit was brought on three promissory notes in January, 1886. The notes were of equal date,—one due the 1st of January, 1886, the second due the 1st of January, 1887, and the third due the 1st of January, 1888. It was alleged that the notes were all due at the time the suit was brought by virtue of covenants in a certain bond for titles which was annexed to the declaration, and which provided that, if the first note was not paid at maturity, then the other two notes should become due. Upon the trial of the case the court without a jury rendered judgment without the consent of the defendant, and, as the record shows, against his consent, upon all the notes. The defendant thereupon moved to arrest judgment upon the ground that the court had no power, under the facts alleged in the declaration, and generally upon the facts and pleading, to render judgment without the intervention of a jury. The supreme court held this to be a conditional contract in writing. Justice BLANFORD, for the court, said:

"Notes falling due on the 1st of January, 1887, and the 1st of January, 1888, are to become due in the event and upon the condition that the first note is not paid; and there is a fact to be tried which does not appear upon the face of the papers,—this fact: whether or not the first note has been paid. This fact the judge could not try. Considering the facts and papers together, it was a condition that the last two notes should fall due upon the first note's not being paid. The fact whether that first note was paid or not was entirely outside of the writing. So we think this is not an unconditional contract in writing, and the judge could not render judgment upon these notes without a verdict of a jury, unless by consent of the defendant; and no such consent appears in this record."

The learned justice adds:

"An unconditional contract is a contract that has no condition in it. It is manifest from the constitution of the state that it is such a contract as the

court, by looking at the paper itself, may determine that judgment should be rendered for the plaintiff in the case. This contract is not such a contract as that. The court would necessarily have to look outside of the paper to determine whether that first note was paid or not; and that question he could not determine under this writing, taking the bond and notes together. So we think the court erred in not arresting this judgment."

In the light afforded by this authority, we are of the opinion that the stipulation in the note now before the court,—that the entire amount shall be due whenever it appears that the interest for one year has not been paid in 30 days after due,—is equally a condition, and the proof with reference to it should have been submitted to a jury; and the court had no power, under the Georgia law, to render judgment without the intervention of a jury. See, also, *Sanner* v. *Sayne*, 78 Ga. 467, 3 S. E. Rep. 651; *Moseley* v. *Walker*, (Sup. Ct. Ga.) 10 S. E. Rep. 623.

Subsequently to the argument of this motion the attention of the court was called to the fact that the original declaration did not aver that Sherwood, the payee of the note, was a citizen of New York, the language used being merely "of New York;" nor that the transferee was a foreign corporation; and the case of *Parker* v. *Ormsby*, 11 Sup. Ct. Rep. 912, decided by the supreme court of the United States May 25th last, was cited to show that under such defective averments it was error to have rendered the judgment, whether or not the question of jurisdiction was raised. The court was also advised that opposing counsel had been referred to this citation, but the case is decided upon the grounds comprehended in the argument had at the hearing. The judgment of the court is that an order be taken vacating the award made by the court, and the judgment signed by the attorney, and the execution issued thereon, and that the defendant have leave to file all proper pleas by the first day of the next term.