BANKERS LIFE INSURANCE COMPANY, APPELLANT, V. A. M. ROBBINS, EXECUTOR, APPELLEE, ET AL.*

FILED DECEMBER 9, 1897. No. 7628.

1. Life Insurance: ACTION ON POLICY: VENUE. A cause of action, or some part thereof, on a life insurance policy arises, within the meaning of section 55 of the Code of Civil Procedure, in the county where the insured died.

2. ———: ———: ———. A life insurance company created under the laws of this state is situated, within the meaning of section 55 of the Code of Civil Procedure, in any county of the state in which it maintains an agent or servant engaged in transacting the business for which it exists.

3. Principal and Agent: EVIDENCE OF RELATION. Whether the relation of principal and agent exists between two parties is generally a question of fact, and, while it is not necessary to prove an express contract between the parties to establish such relation, either that must be done, or the conduct of the parties must be such that the relation may be inferred therefrom.

4. ———: ———: INSURANCE COMPANIES. Section 8, chapter 16, Compiled Statutes, declares what conduct on the part of a person shall be conclusive evidence of the fact that he is an agent of a foreign insurance company. The section has no application to an agent of an insurance company created under the laws of this state.

*Rehearing allowed.

5. ———: ———: ———. The fact that a bank collects and remits to a domestic insurance company premiums due from its policy-holders, but transacts, and is authorized to transact, no other business for the insurance company, is not evidence which will, of itself, sustain a finding that such bank is the agent of such insurance company within the meaning of section 74 of the Code of Civil Procedure.

6. **Void Judgment:** INJUNCTION: PLEADING AND PROOF. A party against whom a judgment has been rendered by default, which judgment is void for want of jurisdiction over the person of the defendant, is not entitled to an injunction to restrain the enforcement of such judgment unless he makes it appear, both from his pleadings and proof, (1) that he has a meritorious defense to the cause of action on which the judgment is based; (2) that he has no adequate remedy at law; and (3) that his plight is in nowise attributable to his own neglect.

7. **Adequate Remedy at Law.** An adequate remedy at law within said rule is one that is as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.

8. ———. The remedies at law available to the appellant, the adequacy of such remedies, and whether the plight of appellant was due to his own negligence, discussed in the opinion.

APPEAL from the district court of Lancaster county. Heard below before STRODE, J. *Reversed.*

See opinion for statement of the case.

*John H. Ames* and *E. F. Pettis*, for appellant:

Service of summons in Valley county was not made upon any agent of the insurance company. There is no evidence that the company ever had an agent in that county, but the contrary is affirmatively shown. The judgment in the district court of Valley county is void. (*Enewold v. Olsen*, 39 Neb. 59; *Chambers v. Bridge Manufactory*, 16 Kan. 270; *Caruthers v. Hartsfield*, 3 Yerg. [Tenn.] 366; *Ridgeway v. Bank of Tennessee*, 11 Humph. [Tenn.] 523; *Bond v. Wilson*, 8 Kan. 228; *Starkweather v. Morgan*, 15 Kan. 274; *Glass v. Smith*, 66 Tex. 548; *Ricketts v. Hitchens*, 34 Ind. 348; *Dobson v. Pearce*, 12 N. Y. 156.)

Relief should be granted when a judgment is shown to be void. (*Blakeslee v. Murphy*, 44 Conn. 188; *Brickley*

*v. Heilbruner*, 7 Ind. 488; *Grass v. Hess*, 37 Ind. 193; *Chambers v. Hodges*, 23 Tex. 110; *Cooke v. Burnham*, 32 Tex. 129; *Glass v. Smith*, 66 Tex. 548; *Collins v. Fraiser*, 27 Ind. 477; *McNiell v. Edie*, 24 Kan. 108.)

Appellant in this action pleaded a sufficient defense to the alleged cause of action in which the void judgment was rendered. The fact that assured, in violation of the policy, concealed the danger to which he was exposed, was sufficient to avoid the contract of insurance. (*North American Fire Ins. Co. v. Throop*, 22 Mich. 146; *New York Bowery Fire Ins. Co. v. New York Fire Ins. Co. of the City of New York*, 17 Wend. [N. Y.] 359; *Hartman v. Keystone Ins. Co.*, 21 Pa. St. 466; *Swift v. Massachusetts Mutual Life Ins. Co.*, 63 N. Y. 186; *Commonwealth Ins. Co. v. Monninger*, 18 Ind. 352; *Goddard v. Monitor Mutual Fire Ins. Co.*, 108 Mass. 56; *Kelsey v. Universal Life Ins. Co.*, 35 Conn. 225; *Ring v. Phœnix Assurance Co.*, 145 Mass. 426; *Jennings v. Chenango County Mutual Ins. Co.*, 2 Denio [N. Y.] 75; *Brady v. United Life Ins. Ass'n*, 60 Fed. Rep. 727; *McFarland v. St. Paul Fire & Marine Ins. Co.*, 46 Minn. 519; *Singleton v. St. Louis Mutual Ins. Co.*, 66 Mo. 63; *Smith v. National Benefit Society*, 123 N. Y. 85; *Dwight v. Germania Life Ins. Co.*, 103 N. Y. 341.)

*A. M. Robbins* and *Reese & Gilkeson, contra:*

The original action was properly brought in Valley county, and that was the proper place to bring the action. (Code of Civil Procedure sec. 55; *Union Central Life Ins. Co. v. Pyers*, 36 O. St. 544; *Bruil v. Northwestern Mutual Relief Ass'n*, 39 N. W. Rep. [Wis.] 529; *Insurance Co. of North America v. McLimans*, 28 Neb. 657; *Harvey v. Parkersburgh Ins. Co.*, 16 S. E. Rep. [W. Va.] 580.)

There was proper service in Valley county upon agents of the company. (Compiled Statutes, ch. 16, sec. 8; *State v. United States Mutual Accident Ass'n*, 31 N. W. Rep. [Wis.] 229; *Southwestern Mutual Benefit Ass'n v. Swenson*, 30 Pac. Rep. [Kan.] 405; *Voorhees v. People's Mutual Ben-*

*efit Society*, 48 N. W. Rep. [Mich.] 1087; *Pacific Mutual Life Ins. Co. v. Williams*, 15 S. W. Rep. [Tex.] 478; *Southern Ins. Co. v. Wolverton Hardware Co.*, 19 S. W. Rep. [Tex.] 615; *Reyer v. Odd Fellows' Fraternal Accident Ass'n*, 32 N. E. Rep. [Mass.] 469; *Gibson v. Manufacturers' Fire & Marine Ins. Co.*, 10 N. E. Rep. [Mass.] 730; *St. Louis & S. F. R. Co. v. Deford*, 16 Pac. Rep. [Kan.] 442; *State v. Northwestern Endowment & Legacy Ass'n*, 22 N. W. Rep. [Wis.] 135; *State v. Farmer*, 5 N. W. Rep. [Wis.] 892; *State v. Farmers & Mechanics Mutual Benevolent Ass'n*, 18 Neb., 276.)

The petition for injunction does not state facts sufficient to constitute a cause of action, but does show that appellant had an adequate remedy at law. (*Hurlburt v. Palmer*, 39 Neb. 158; *Anheuser-Busch Brewing Ass'n v. Peterson*, 41 Neb. 897; *Marine Ins. Co. v. Hodgson*, 7 Cranch [U. S.] 332; *Mastick v. Thorp*, 29 Cal. 447; *Englebrecht v. Shade*, 47 Cal. 627; *Hopkins v. Keller*, 16 Neb. 571; 1 High, Injunction secs. 29, 125, 129, 131; *Patterson v. Hill*, 16 N. W. Rep. [Ia.] 599; *Horn v. Queen*, 4 Neb. 108; *Pope v. Hooper*, 6 Neb. 178; *Kittle v. Wilson*, 7 Neb. 76; *Pilger v. Torrence*, 42 Neb. 903; *Paul v. Davidson*, 43 Neb. 505; *Massachusetts Benefit Life Ass'n v. Lohmiller*, 74 Fed. Rep. 23; *Woodward v. Pike*, 43 Neb. 777; *Langley v. Ashe*, 38 Neb. 53; *Norwegian Plow Co. v. Bollman*, 47 Neb. 186; *San Antonio & A. P. R. Co. v. Cockvill*, 10 S. W. Rep. [Tex.] 702.)

Receipt and retention of premiums after loss constitute a waiver of forfeiture of the policy. An insurer cannot hold the fruits of a fraudulent transaction and at the same time plead the fraud of insured. (*Rice v. New England Mutual Aid Society*, 146 Mass. 248; *McGurk v. Metropolitan Life Ins. Co.*, 56 Conn. 528; *Billings v. German Ins. Co.*, 34 Neb. 502; *Farmers Union Mutual Ins. Co. v. Wilder*, 35 Neb. 573; *Zell v. Herman Farmers Mutual Ins. Co.*, 44 N. W. Rep. [Wis.] 829; *Smith v. St. Paul Fire & Marine Ins. Co.*, 13 N. W. Rep. [Dak.] 355.)

There was no competent evidence that statements in

assured's application for insurance were untrue, or that the risk was hazardous. (*Fraternal Mutual Life Ins. Co. v. Applegate*, 7 O. St. 297; *Washington Life Ins. Co. v. Haney*, 10 Kan. 403; *Rawls v. American Life Ins. Co.*, 36 Barb. [N. Y.] 357; *John Hancock Mutual Life Ins. Co. v. Daly*, 65 Ind. 6.)

Ragan, C.

The Bankers Life Insurance Company is a corporation created and subsisting under and by virtue of the laws of this state, having its domicile and principal place of transacting its business in the city of Lincoln, in Lancaster county. In October, 1891, it insured the life of John C. Morrow in the sum of $5,000, payable on his death to his wife, Anna B. Morrow. Morrow at this time was a resident of Valley county, Nebraska, in which county he subsequently died. In the district court of said county Mrs. Morrow brought suit on said insurance policy against the insurance company, and a summons was issued for the insurance company and delivered to the sheriff of said county for service. This summons said sheriff duly returned, reciting that he had served it upon the insurance company in said Valley county by delivering a true copy thereof to one J. L. McDonough, the agent of said insurance company in said county, and that he had served it upon the insurance company in said Valley county by delivering a true copy of said summons to J. A. Patton, the cashier of the Ord State Bank, situate in said county, the chief officer of said bank not being found in the county, and said bank being then and there the agent of said insurance company. The insurance company made no appearance whatever to this action. In November, 1892, the district court of said Valley county rendered a judgment by default in favor of Mrs. Morrow, and against the insurance company, on said insurance policy. Subsequently Mrs. Morrow died testate, and A. L. Robbins was appointed her executor; and, subsequent to this, Robbins caused an

execution to be issued on said judgment and placed in the hands of the sheriff of Lancaster county, and the insurance company thereupon instituted in the district court of said Lancaster county this action against the sheriff of said county and Robbins, the executor, to enjoin the collection of said execution and the enforcement of said judgment on the ground that the district court of Valley county had no jurisdiction over the person of the insurance company and that the judgment was therefore absolutely void. The trial in the district court of Lancaster county resulted in a dismissal of the insurance company's action and it appeals.

1. Since the insured died in Valley county the cause of action upon the insurance policy, or some part thereof at least, arose in that county within the meaning of section 55 of the Code of Civil Procedure. (*Union Central Life Ins. Co. v. Pyers*, 36 O. St. 544; *Bruil v. Northwestern Mutual Relief Ass'n*, 39 N. W. Rep. [Wis.] 529.) And since the insurance company was a corporation created by the laws of this state, if it was situate in said Valley county within the meaning of said section 55 of the Code of Civil Procedure, then the action of Mrs. Morrow on the insurance policy was properly brought in Valley county, and the insurance company was situate in Valley county within the meaning of said section 55 of the Code of Civil Procedure, if, at that time, it had and maintained in said county a place of business and an agent or servant engaged in conducting and carrying on the business for which it existed. (*Fremont Butter & Egg Co. v. Snyder*, 39 Neb. 632.) And if McDonough, or the State Bank of Ord upon whom the summons was served, or either of them, was then and there the agent or servant of the insurance company in and for said Valley county, engaged in, and conducting and carrying on, the business of the insurance company, the summons was properly served upon such agent or agents, the court had jurisdiction of the insurance company, and its judgment was not void.

8

2. The evidence in the record shows without dispute that at the time this summons was served upon McDonough he was not, and had never been, the agent of the insurance company. He had never taken an insurance application for it, nor had he ever claimed to be the insurance company's agent. At the time Morrow's policy of insurance was applied for an agent of the insurance company was in Valley county and McDonough introduced this agent to a number of persons in that county, and the insurance company desired McDonough to act as its agent in that county, but he never agreed to so act, and he was never appointed by the company, nor did he ever do anything for it from which his agency could possibly be inferred. Whether the relation of principal and agent exists between two parties is generally a question of fact; and while it is not necessary to prove an express contract between the parties to establish such relation, either that must be done, or the conduct of the parties must be such that such relation may be inferred therefrom. Here the record discloses affirmatively that no express contract existed between these parties that would create such a relation, and there is a total want of evidence from which such a relation might be inferred. The district court of Valley county then obtained no jurisdiction over the insurance company by the service of this summons upon McDonough.

3. This brings us to the contention of the appellee that the Ord State Bank was the agent of the insurance company. At all times after Morrow's insurance policy was issued the insurance company would transmit to the Ord State Bank the calls or assessments for the premiums due from its policy holders living in Valley county, at the same time notifying the policy-holder that he could pay his premium, or call, to the Ord State Bank, and that that institution would give him a receipt for such call or premium. The insurance company, when transmitting these calls for premiums to the bank, would forward to it receipts for the policy-holder for the premium, instruct-

ing the bank that when the premium was paid, and it delivered the receipts, to countersign the same. Numerous policy-holders—among them Morrow himself—paid their premiums to this bank under this arrangement between it and the insurance company, and the bank accounted to the insurance company for the premiums thus received. This is the only business or service performed by the bank for the insurance company; and the contention of the appellee is that the conduct of the insurance company and the bank in the matter of the collection and remittance of these premiums is evidence which establishes that the relation of principal and agent existed between them, and that the bank was an agent of the insurance company upon whom service of summons might be had, within the meaning of the statutes of this state. In support of its contention that the bank was such agent of the insurance company the appellee contends that inasmuch as the bank was collecting and remitting the premiums on calls which the insurance company forwarded its policy-holders, section 8, chapter 16, Compiled Statutes, made the bank an agent of the insurance company upon whom service of summons might be had. This chapter 16, Compiled Statutes, is entitled "Corporations," and the first 14 sections of it deal with insurance companies. The first section provides that every insurance company incorporated under the laws of this state shall make specific statements to the auditor of public accounts, which statements shall contain a list of its assets and liabilities, the names of its officers and agents, and their place of residence, etc. The second section makes it the duty of such an insurance company to make these statements to the auditor semi-annually and prescribes what the statements shall contain. The third section denounces a penalty against the president and secretary of any such an insurance company that shall fail to comply with the act. The fifth section of the act provides that no agent of any insurance company created under the laws of any other state or ter-

ritory shall take any risk or transact any business of insurance in the state without first procuring a certificate of authority from the auditor of public accounts, and before he shall be entitled to such a certificate such an agent shall furnish the auditor with a statement under oath, signed by the president or secretary of the foreign insurance company, showing certain things enumerated in the section. Section 6 of the act provides, in substance, that no agent of any insurance company created under the laws of any foreign government other than one of the states of the nation shall transact any business in this state without first procuring a certificate of authority therefor from the auditor of the state, and then the section prescribes what such an agent shall do in order to obtain such a certificate. Section 7 of the act provides for an annual renewal of the statements required to be made to the auditor. Section 8 of the act relied upon by appellee provides that: "Any person or firm in this state who shall receive or receipt for any money on account of or for any contract of insurance made by him or them * * * or who shall receive or receipt for money from other persons to be transmitted to any such company or individual aforesaid, for a policy or policies of insurance or any renewal thereof, * * * or who shall in anywise directly or indirectly make or cause to be made any contract or contracts of insurance for or on account of such company aforesaid, shall be deemed to all intents and purposes an agent or agents of such company and shall be subject and liable to all the provisions of this chapter." Section 10 of said act denounces a penalty of a fine of $1,000, or imprisonment in the county jail for thirty days, or both, for violation of the act. Now it is quite evident that this section 8 simply declares what conduct on the part of a person shall be evidence of the fact that he is an agent of a foreign insurance company. The section was designed to aid the state in prosecuting agents of foreign insurance companies for transacting the business of insurance in this state without first hav-

ing procured from the auditor of this state a certificate of authority therefor. It was never designed nor intended by the legislature by this section that it should apply to an agent of an insurance company created under the laws of this state. We conclude, therefore, that if the fact that a bank collects and remits to a domestic insurance company premiums due from its policy-holders is, of itself and alone, evidence which would sustain a finding that the relation of principal and agent exists between the parties in such sense that such an insurance company might be properly served with summons by leaving a copy of summons with such agent, this result does not flow from, or depend in any manner upon, said section 8.

Counsel for the appellee have cited us to numerous cases which they claim hold that this said section 8, or statutes in all respects similar, apply alike to persons or banks acting for foreign and domestic insurance companies. It is not necessary to review these authorities. Not one of them is in point. They are all cases in which some person or some bank had received or collected and remitted premiums due a foreign insurance company from its policy-holder; and the court simply held, in accordance with the plain provisions of the statute, that the receiving and receipting for the premium by the bank or person, and transmitting the money received to the insurance company, made such bank or person an agent of such foreign insurance company upon whom a service of summons might properly be had. Among the cases cited is *Southwestern Mutual Benefit Ass'n v. Swenson*, 30 Pac. Rep. [Kan.] 405.

4. A further contention of the appellee in support of the validity of the judgment of the district court of Valley county is that, independently of said section 8, chapter 16, the Ord State Bank was an agent of the insurance company within the meaning of section 74, Code of Civil Procedure. This section is as follows: "When the defendant is an incorporated insurance company, and an

action is brought in a county in which there is an agency thereof, the service may be upon the chief officer of such agency." The argument is that the conduct of the bank in receiving, receipting for, and transmitting the premiums due the insurance company from its policyholders, with the knowledge and consent of the insurance company, made the bank the agent of the insurance company within the meaning of said section 74. We cannot agree to this contention. It is true that the bank, in doing what it did, was acting as the agent of the insurance company, but it was a special agent for a special purpose. It was not transacting for the insurance company the business for which the insurance company was organized, to-wit, the taking of risks, the issuance of policies, or the renewal of policies. If the insurance company had sent a call against the policy-holder to an attorney in Valley county for collection, that attorney, while engaged in attempting to collect this call or premium, would have been an agent of the insurance company; but he would have been a special agent, and we do not think any one would contend that the insurance company might be brought into the district court of Valley county and subjected to its jurisdiction by a service of summons upon such an attorney as its agent. To sustain his contention that the bank was an agent of the insurance company, within the meaning of said section 74 of the Code, or was situate in said Valley county at the time of the service of the summons upon the bank within the meaning of section 55 of the Code, appellees rely upon *Fremont Butter & Egg Co. v. Snyder*, 39 Neb. 632. But that case is distinguishable from the one at bar. In the Butter & Egg Case the corporation was a domestic one, with its principal place of business in Dodge county. It was a trading corporation engaged in buying, packing, and shipping butter and eggs. It rented a building and had a place of business in Saunders county. It had a man named Darrah there in its employ who was buying and shipping butter and eggs for it and

drawing on it for what he paid out on its behalf.   Snyder & Co. sued the corporation in Saunders county, and one contention of the corporation was that the district court of Saunders county had no jurisdiction over it, as it could not be sued in that county, its principal place of business being in Dodge county.   But this court said, construing section 55 of the Code, that it was situated where it had and' maintained a place of business and servants, employés, and agents engaged in conducting and carrying on the business for. which it existed. , If the Ord State Bank at the time it was served with summons as the agent of the insurance company had been engaged in soliciting insurance the case would be an authority in point.   We reach the · conclusion that the Ord State Bank, at the time of the service upon it of the summons of the Valley county district court, was not the agent of the insurance company; that the district court of Valley county, by the service of such summons, acquired no jurisdiction over the insurance company, and that the judgment pronounced by it was and is absolutely void.

5. But it does not necessarily follow because this judgment is void for want of jurisdiction over the insurance company that the latter is entitled to an injunction to restrain its enforcement.   Injunction suits to restrain the enforcement of judgments have been many times before the courts, as will be seen from an examination of the following cases out of the many in the books: *Horn v. Queen,* 4 Neb. 108; *Scofield v. State Nat. Bank,* 9 Neb. 316; *Colby v. Brown,* 10 Neb. 413; *Young v. Morgan,* 13 Neb. 48; *Gould v. Loughran,* 19 Neb. 392; *Johnson v. Van Cleve,* 23 Neb. 559; *Proctor v. Pettitt,* 25 Neb. 96; *Winters v. Means,* 25 Neb. 241; *Lininger v. Glenn,* 33 Neb. 187; *Janes v. Howell,* 37 Neb. 320; *Langley v. Ashe,* 38 Neb. 53; *Norwegian Plow Co. v. Bollman,* 47 Neb. 186; *Hendrickson v. Hinckley,* 17 How. [U. S.] 442; *Knox County v. Harshman,* 133 U. S. 152; *Massachusetts Benefit Life Ass'n v. Lohmiller,* 74 Fed. Rep. 23; *Fickes v. Vick,* 50 Neb. 401; *Losey v. Niedig,* 52 Neb. 167.   Without attempting to review

all or any of these cases we think they are authority for the following rule: A party against whom a judgment has been rendered by default, which judgment is void for want of jurisdiction over the person of the defendant, is not entitled to an injunction to restrain the enforcement of such judgment unless it appears, both from his pleadings and proof, (1) that he has a meritorious defense to the cause of action on which the judgment is based; (2) that he has no adequate remedy at law; and (3) that his plight is in nowise attributable to his own neglect. The eminent counsel who represents the appellant in this case concedes that the rule in many jurisdictions, and in this, is that an injunction will not be granted to restrain the collection of a judgment void for want of jurisdiction over the defendant thereto, unless such defendant makes it appear that he had a meritorious defense to the cause of action on which the judgment is based. But the counsel says that the court has fallen into an error in establishing this rule, and that he is satisfied, if we will review the authorities and reconsider the principles upon which those cases rest, we will overrule them. We have re-examined these authorities and reconsidered the principles upon which they rest and instead of departing from the rule announced by them, we feel satisfied in adhering to it.

One reason for the rule is that equity will not do a useless thing; and it would subserve no useful purpose to set aside a judgment void for want of jurisdiction, if the party asking this had no defense to the action upon which it was based.

Another reason for this rule is that it is not enough that the judgment assailed be unlawful. It must be against conscience as well. We now proceed to apply the rule just stated to the case at bar, and the first inquiry is whether the appellant has made it appear from the pleadings and evidence that he had a meritorious defense to the cause of action upon which this judgment is based. The district court found that the

appellant had such a defense. This finding is based upon the evidence in the record that Morrow, at the time he made application for and received the insurance policy involved herein, was at enmity with certain persons who had threatened to take his life, and he was then in constant fear and expectation that these parties would murder him; that he fraudulently concealed these facts from the insurance company and thereby induced them to take the risk upon his life which they would not have taken had they been advised of the facts, and that Morrow came to his death at the hands of these parties who had threatened his life. It is true that the finding of the district court is that the appellant had made out a *prima facie* defense. This was all the district court was required to and probably all he should have found on the subject. It was not his duty to go into the merits of the alleged defense of the insurance company any further than to ascertain that the appellant had made out a *prima facie* valid defense, and that it was urging the same in good faith. (*Western Assurance Co. v. Klein*, 48 Neb. 904.) We conclude, therefore, that the finding of the district court that the appellant, both by his pleading and evidence, had made a *prima facie* meritorious defense to the cause of action upon which the void judgment was based is correct.

A second question under the rule is, had the appellant a remedy at law? The insurance company knew that Mrs. Morrow had sued it in Valley county and obtained this information before the time fixed for it to answer by the summons issued in that case. It might have appeared specially in that court and objected to its jurisdiction on the ground that the summons had not been served upon it in that county, nor upon any one who was its agent. After the judgment was rendered it might have prosecuted an error proceeding therefrom to this court, and we think it might have moved the court, under section 602 of the Code of Civil Procedure, to set the judgment aside. If the execution issued on

the judgment had been levied upon its personal property, the insurance company might have replevied the same. If the execution had been levied upon its real estate, it might have resisted a suit in ejectment brought by the purchaser at the execution sale. Here, then, is not only a remedy but several remedies at law. But were these remedies adequate ones within the meaning of the rule and the law? In *Wellon v. Dickson*, 39 Neb. 707, this court, following the rule laid down by the supreme court of the United States in *Watson v. Sutherland*, 72 U. S. 74, said: "It is not enough that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." If the insurance company, on being informed that it had been sued in Valley county, had appeared specially in that court, objected to its jurisdiction over it, and put in the proof that it has in this case, then, had the district court ruled in favor of its jurisdiction, the insurance company might have prosecuted an error proceeding to this court, which would have resulted in a dismissal of the action brought in Valley county. But if the insurance company was not situated in and had no agent in Valley county, within the meaning of sections 55 or 74 of the Code of Civil Procedure, it was entitled to have the suit against it tried in the district court of Lancaster county; and while by appearing specially in Valley county and objecting to the jurisdiction of the court and prosecuting a proceeding in error, if unsuccessful, to this court, it would have obtained the same result that it seeks to obtain by this injunction proceeding, still we do not think the insurance company's remedies by special appearance or motion under section 602 of this Code were adequate ones. A remedy is not adequate, within the meaning of this rule, which compels the citizen to go from the county of his residence into a foreign jurisdiction in which he has never been present and in which he has never been lawfully summoned. The right of the

insurance company to be sued in the county where its principal place of business was located, or in some county in which it was situated or had an agent, was and is a legal right; and it is a strained construction of language to say that because a litigant may go into a foreign jurisdiction and enter a special appearance to an action, that that remedy is adequate, when, beside the costs, expenses, and time spent in attending court in the foreign jurisdiction, he is compelled to surrender valuable legal rights. The insurance company might have taken this judgment to the supreme court on error proceeding at any time within one year after its rendition, but that remedy would not have been adequate, because the record discloses on its face that the insurance company had been duly summoned in Valley county, and in that proceeding it could not have introduced evidence to show that it in fact had no agent or agency in that county upon whom service of process could be made. Had the insurance company waited until the sheriff levied upon its personal property and replevied it, or had it waited and resisted an ejectment suit by the purchaser of its real estate at execution sale, then the record discloses that it would have had no redress for the costs expended by it in prosecuting the replevin action or in resisting the ejectment suit, as the appellees were wholly insolvent. In this connection we deem it proper to say we do not think that the provisions of section 602 of the Code contemplate a void judgment, but one which is voidable by reason of some fraud or irregularity. Such a construction indeed has by the supreme court of the state of Iowa been placed upon a section of the Iowa Code identical with said section 602. (See *Leonard v. Capital Ins. Co.*, 70 N. W. Rep. [Ia.] 629.) Yet, while we think that the provisions of said section of the Code specially apply to voidable judgments, we do not doubt that one against whom a judgment has been rendered, which is void for want of jurisdiction over it, may have such judgment set aside under the

third subdivision of said section of the Code, as having been irregularly obtained. Our conclusion is, that while the insurance company had a remedy at law, such remedy was not an adequate one; that in order to avail itself of some of these remedies it would have been compelled to sacrifice other legal valuable rights; and to have resorted to others it would have suffered damages for which it could have received no redress.

A final inquiry under the rule is whether the plight or condition in which the insurance company finds itself is in anywise attributable to its own neglect. We do not think it is. It is true that while it had been advised that it had been sued in Valley county it made no move to defend itself; but we are clearly of opinion that this was neither negligence nor evidence of negligence. It was a state corporation domiciled in Lancaster county; and by the very law of its creation could be sued only in that county, unless it had voluntarily established a place of business or appointed an agent in some other county for the transaction of its business. It was not guilty of negligence in failing to take notice of rumors, or even correct information, that it had been sued in a jurisdiction in which it did not reside, in which it was not suable, and in which it had no agent on whom service of process could be made. It was compelled to presume that the district courts knew the law of the land and it had the right to suppose that they would rule in accordance with that law.

The decree of the district court is reversed and a judgment will be entered here decreeing the judgment of the district court of Valley county to be absolutely void for want of jurisdiction over the person of the defendant therein, and perpetually enjoining the appellees and those claiming under them from enforcing, or attempting to enforce, the collection of such judgment.

DECREE ACCORDINGLY.