SECURITY MUTUAL LIFE INSURANCE COMPANY, APPELLEE,
v. NICHOLAS RESS ET AL., APPELLANTS.

FILED MARCH 8, 1906.  No. 14,181.

1. Corporations: VENUE. The fact that an agent is temporarily employed in transacting the business of a domestic corporation in a county other than the one where the corporation has its principal place of business does not subject such corporation to the jurisdiction of the courts of that county under the provisions of section 55 of the code.

2. ——: ——. The residence of a person who is employed as the agent of a domestic corporation is personal, and is immaterial in an inquiry as to whether a domestic corporation is situated in a county within the meaning of said section.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Talbot & Allen* and *W. H. Thompson,* for appellants.

*N. Z. Snell* and *Field, Ricketts & Ricketts, contra.*

JACKSON, C.

The appellee had judgment in the district court for Lancaster county enjoining the sheriff of that county and others from enforcing an execution issued out of the district court for Hall county. The defendants have brought the case to this court by appeal.

The appellee is a domestic life insurance corporation, with the principal place of transacting its business in the

city of Lincoln. An action was instituted against the appellee in the district court for Hall county by the beneficiaries named in a policy of life insurance issued by appellee. Summons was issued and delivered to the sheriff of that county, who made return as follows: "The State of Nebraska, Hall County, ss.: I hereby certify that on the 27th day of June, 1904, I served the within writ of summons on the within named the Security Mutual Life Insurance Company by delivering a true and duly certified copy of the same with all indorsements thereon to Charles Wasmer, he being the agent and chief officer of the said the Security Mutual Life Insurance Company in Hall county. S. N. Taylor, Sheriff." The company made no appearance in that action, and on September 28, 1904, judgment was entered as prayed in the petition. On the following day the sheriff of Hall county applied to the court for permission to amend his return to correspond with the facts relative to the service, and, leave of court having been obtained, the return was amended to read as follows: "The State of Nebraska, Hall County, ss.: By leave of court Sept. 29, 1904, I hereby certify that on the 27th day of June, 1904, I served the within writ of summons on the within named the Security Mutual Life Insurance Company by leaving a true and duly certified copy of the same with all indorsements thereon at the usual place of residence of Charles Wasmer, he being the agent and chief officer of the said the Security Mutual Life Insurance Company in Hall county. No other officer of said defendant being found in Hall county. S. N. Taylor, Sheriff." In fact, the sheriff left a copy of the summons at the residence of Charles Wasmer, whose wife forwarded the same to him, he then being absent from Hall county. When Wasmer returned to his home he brought the copy with him and placed it in a pigeonhole in his desk at his residence. He did not forward it to the company, and failed to inform the company of the fact of such service.

Wasmer was termed a special agent. His employment

by the company was by written contract. He had authority to solicit applications for insurance, to collect and receipt on the company's binding receipt form for any part or all of the first year's premium on insurance applied for, and to remit the same to the company with the application. He was authorized by the contract to solicit insurance only in such territory as might be designated or permitted by the directors of the company, and his employment contemplated the appointment and instruction of subagents, subject to the approval of the directors of the company. In consideration for the services he was to receive a certain stipulated per cent. of the premiums. The company maintained no office in Hall county. Wasmer had no office there, although it was his home and his residence was there with his family. Concerning this Wasmer testified as follows: "Q. Have you ever had any office there? I mean the Security Mutual Life Insurance Company? A. Not since I have been with the Security Mutual Life Insurance Company; no sir. Q. Where do you solicit insurance? A. Wherever I go. I travel a great deal, go to other places, counties and cities, and visit parties whom I would like to talk insurance to. Q. How much of your time do you actually put in in Hall county would you say? A. Well, it is very little time. It is only the time when I am coming home for a few days; probably not more than two months in a year. * * * Q. You may state when you were in Grand Island last prior to the 27th day of June, 1904. A. I was there on the 9th day of May. Q. And then when next were you in Hall county? A. On the 6th day of July. I arrived there about the 3d of July. * * * Q. And between those dates you were not in Hall county? A. Not that I know of, I could not say surely. Q. Well, how certain are you of it? A. I am certain this way, that I have not been in Grand Island from the 20th day of June until the 3d day of July; that is the time that I suppose is important. Q. Grand Island or Hall county? A. Yes, sir. The company procured from the state audi-

tor an agent's certificate for Wasmer, describing him as an agent at Grand Island, in Hall county, and authorizing him to transact the business of insurance as agent of the company in the state. This certificate was in force at the time the action was commenced in Hall county. Wasmer appointed no subagents, but did, in fact, solicit insurance for the company in all parts of the state without restriction. The secretary of the company was a witness in its behalf, and testified to its principal place of business as having been originally located at Fremont and afterwards changed to Lincoln; that the company never was located in Hall county and had maintained no office there; that all the agents of the company were employed to solicit insurance and were authorized to collect the first premium; that they could select their own territory wherever the company was authorized to do business; that Wasmer operated at Grand Island, Scotia, Cedar Rapids, Spalding, Primrose, Wolbach, St. Paul, Wilber and Talmage; that they corresponded with him at whatever point he happened to be, unless they were in doubt as to where he was, when his mail was sent to his residence at Grand Island to be forwarded.

The cause of action arose in Lancaster county, and prior to the proceedings in Hall county action on the policy had been instituted in the county of Lancaster; the case there tried resulting in a verdict and judgment for the plaintiffs which on error to the supreme court had been reversed, and thereafter, for some reason, the action was by the plaintiffs dismissed without prejudice.

The questions presented by this appeal are: Did the district court for Hall county have jurisdiction to hear and determine the case; did the service shown by the record give the district court for Hall county jurisdiction over the person of the insurance company; and, if not, has the company shown itself entitled to relief, as against the judgment there rendered, by injunction. Section 55 of the code, in force at the time of the institution of the action, was as follows: "An action other than one of

those mentioned in the first three sections of this title, against a corporation created by the laws of this state, may be brought in the county in which it is situated, or has its principal office or place of business; but if such corporation be an insurance company, the action may be brought in the county where the cause of action, or some part thereof, arose." None of the provisions of the first three sections of the title applies to actions like the one under consideration. In *Western Travelers Accident Ass'n v. Taylor*, 62 Neb. 783, that section was construed, and it was held that a domestic corporation could only be sued, first, in the county where, by its articles of incorporation, it has fixed its principal office or place of business; second, in any county where it maintains an agency and servants and employees engaged in carrying on the business for which it exists; and, third, in the county where the cause of action, or some part thereof, arose. The sixth paragraph of the syllabus in that case is:

"When the legislature provides the county in which a domestic corporation may be sued, such provision is exclusive."

It is conceded that the corporation did not have its principal office or place of business in Hall county and that the cause of action arose in Lancaster county, so that the question is, did the company maintain an agency in Hall county, so that it might be said to be situated there, within the meaning of the provisions of section 55. In paragraph five of the syllabus in *Western Travelers Accident Ass'n v. Taylor, supra,* it is said:

"A domestic corporation may be sued only in the places provided by law, and the tempory presence of one or more of the officers of such corporation in another jurisdiction does not authorize the corporation to be sued there."

In that case service was had on the secretary of the company while temporarily in Douglas county, engaged in an effort to settle the very controversy over which the action was brought. The principal place of business of the corporation was in Hall county, it maintained no

office in Douglas county, and it was held that the action was improperly brought in Douglas county.

In *Fremont Butter & Egg Co. v. Snyder,* 39 Neb. 632, the company was a domestic corporation with its principal place of business at Fremont, in Dodge county. It was sued in Saunders county. The jurisdiction of the court over the corporation in that county was questioned. It appeared, however, from the evidence that the company had a branch house at Wahoo, in Saunders county, where it displayed its sign, "Fremont Butter & Egg Co. Buyers of Butter and Eggs." It had employed there one or more persons engaged in transacting the company's business, buying, assorting and boxing eggs, which were shipped to the Fremont house and to other points, as the corporation manager directed. The business there was of a permanent nature, and it was held that the action was properly brought in Saunders county; that the corporation was situated there within the meaning of the statute.

In *Bankers Life Ins. Co. v. Robbins,* 53 Neb. 44, an action on a life insurance policy against a domestic corporation, it was held that the action was properly brought in Valley county, although the company was domiciled in Lancaster county, because of the fact that the insured died in Valley county, and the cause of action arose there for that reason.

A review of the adjudications of this court, where the provisions of section 55 of the code have been under consideration, leads to the conclusion that the mere presence of an agent of a domestic corporation in a county is not sufficient to give the courts of that county jurisdiction in an action against such corporation, and the residence of an agent does not necessarily justify the inference that the principal is situated within the county of such residence; and the fact that an agent is temporarily engaged in transacting the business of his principal even in the county where the agent resides, is not sufficient to vest the courts of that county with jurisdiction over an action against the corporation. We do not regard the fact that

Wasmer resided in Hall county as being at all important to the inquiry. The duties arising out of his employment were of such a character that they could and did permit of their being performed in any county in the state, and there is no more reason for holding that, because of his employment, an action might be maintained against the company in Hall county, than for holding that, because of such employment, the company might be sued in any county where he was transacting its business. We think something more is contemplated by the term "situated" in section 55 than the mere temporary presence of an agent in a county for the purpose of transacting the company's business. The fact that the agent received and answered correspondence and kept blank supplies in his residence in Hall county, as the evidence discloses, is not sufficient to show that the company maintained an office there. He received and answered correspondence in every county where he transacted business, he carried supplies with him as an incident to his employment; in fact, the business transacted by him for his principal was the same in whatever county he was employed. The scope of the employment and the character of the business transacted by him all tend to support the claim of the company that they maintained no office in Hall county; that the company was not situated there within the meaning of the statute, and we think the trial court correctly concluded that the judgment rendered in Hall county was void for that reason.

The company has pleaded that at the time of the death of the insured the policy had lapsed by reason of the nonpayment of premiums, and the evidence is sufficient to establish that defense, at least, *prima facie;* but the appellant insists, notwithstanding, that the remedy by injunction should not be allowed because the company had an adequate remedy at law. In *Bankers Life v. Robbins, supra,* it was held:

"A remedy is not adequate, within the meaning of this rule, which compels the citizen to go from the county of

his residence into a foreign jurisdiction in which he has never been present and in which he has never been lawfully summoned. The right of the insurance company to be sued in the county where its principal place of business was located, or in some county in which it was situated or had an agent, was and is a legal right; and it is a strained construction of language to say that, because a litigant may go into a foreign jurisdiction and enter a special appearance to an action, that that remedy is adequate, when, besides the costs, expenses, and time spent in attending court in the foreign jurisdiction, he is compelled to surrender valuable legal rights."

The rule there announced is peculiarly applicable to the conditions of this case, and is a complete answer to the claim of a lack of equity.

The judgment of the district court was right, and we recommend that it be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.