## LAUGHTON v. NADEAU et al.

### (Circuit Court, D. Kansas, First Division. June 29, 1896.)

### No. 7,143.

**1. INDIAN LANDS—ALIENATION.**

The treaty with the Pottawatomie Indians of 1862, by article 2, restrained an allottee of lands from alienating the same without the president's consent, under regulations established by the secretary of the interior. By article 3 members of the tribe, being adult males and heads of families, with the consent of the president and on becoming naturalized before the United States court, could receive patents for their lands, with full power to sell the same. Under the treaty of 1867, when an allottee died, a patent was issued to deceased and his heirs, and the land was administered under the Kansas laws. '*Held*, that an Indian boy, 11 years old, whose patent was obtained by false representations that he was dead, could not alienate his land, nor could a guardian appointed by the probate court do so.

**2. SAME—APPOINTMENT OF ADMINISTRATOR.**

The provision in the treaty of 1867, giving the probate court authority to appoint administrators and settle the estates of deceased allottees, gave such court no authority to appoint administrators of an Indian unless he had been an allottee under the treaty, and was dead.

**3. SAME—BONA FIDE PURCHASERS.**
   Parties dealing with Indians must take notice of public treaties and acts of congress, and do not take land as bona fide purchasers, relieved of restrictions on alienation, merely because no such restriction appears on the patent.

**4. VOID PROCEEDINGS—RATIFICATION.**
   Proceedings void for want of jurisdiction cannot be cured by ratification or waiver.

**5. LACHES.**
   No laches can be imputed to one under disability as a tribal Indian.

Harrison & Adams, for complainant.
A. H. Case and John Guthrie, for defendants.

FOSTER, District Judge. The complainant, David Laughton, filed this bill October 2, 1894, to establish and quiet his title to the following lands, to wit: The S. ½ of the N. E. ¼ of section 28, township 10, range 13 E. of the sixth P. M. in Shawnee county, Kan., containing 80 acres. Complainant was, in 1862, at the date of the ratification of the treaty between the United States and the Pottawatomie Indians (12 Stat. 1191), a member of that tribe, and was about nine years of age at that time. He had no father living, and was making his home with the defendant Eli G. Nadeau, who had married his aunt. He was carried on the rolls of the tribe, as certified by the Indian agent, under the provisions of the treaty of 1862, as an allottee entitled to the 80 acres of land before described. It appears from the roll of allottees made out by the agent under the authority of article 2 of said treaty, in 1863, that said complainant was an allottee entitled to the land above described, and that he was at that time 11 years of age. Under the senate amendment to the eighth article of the treaty with the Pottawatomie Indians of 1867 (15 Stat. 531), it was provided as follows:

"Where allottees under the treaty of eighteen hundred and sixty one shall have died, or shall hereafter decease, such allottees shall be regarded, for the purpose of a careful and just settlement of their estates, as citizens of the United States and of the state of Kansas, and it shall be competent for the proper courts to take charge of the settlement of their estates under all the forms and in accordance with the laws of the state, as in the case of other citizens deceased; and in cases where there are children of allottees left orphans, guardians for such orphans may be appointed by the probate court of the county in which such orphans may reside, and such guardians, shall give bonds, to be approved by the said court, for the proper care of the person and estate of such orphans as provided by law."

The business committee of the Pottawatomie Indians, consisting of Joseph N. Bourassa, George L. Young, and the defendant Eli G. Nadeau, in January, 1871, presented to the secretary of the interior at Washington a list, which was approved by the Indian agent of the tribe, showing the names, ages, and sex of deceased Pottawatomie Indians, whose legal representatives were entitled to the lands allotted to said deceased persons under the treaty, and, among others, appears the name of this complainant. Under the authority of that certificate, the secretary of the interior ordered a patent to be issued to the complainant for said land, which was accordingly done on April 15, 1871, and the fee to said land

was conveyed to David Laughton, his heirs and assigns. As a matter of fact, however, said allottee was not deceased, but was at that time, and ever since has been, a very live Indian. Whether said certificate of the business committee of the tribe alleging that the allottee was deceased was made through mistake or through the fraud of some person connected therewith does not clearly appear from the evidence in the case, although it is certain that Eli G. Nadeau was well aware that said allottee was not dead, as he then was, and had been for many years, a member of his own family. Shortly after the issuance of this patent, Eli G. Nadeau, on June 14, 1871, took out letters of guardianship of this minor allottee from the probate court of Shawnee county, Kan., and on or about the 26th day of June procured an order from said court for the sale of the land of said minor, and the same was afterwards, on or about July 15, 1871, sold, and bid in by Julia A. Nadeau, wife of said guardian, for $1,500, which was about $300 more than the value fixed by the appraisers. The guardian's deed was filed for record in Shawnee county on August 3, 1871. The proceeds of the land appear from the records of the probate court to have been properly accounted for by the guardian. In July, 1874, after the land had been sold, the complainant made a settlement with his guardian, and gave a receipt and release in full, alleging that he was at that time 21 years of age. The following is a copy of the release:

"Received of Eli G. Nadeau, guardian, the sum of six hundred and thirty dollars ($630), the same being in full of all moneys now due me from him as my guardian, and I hereby release said guardian from further liability as such on account of moneys due me, and authorize the probate court to discharge said guardian in full, I now being of age.     David Laughton.
"Witnesses:
    "B. F. Heller.
    "O. H. Drew."

I think the preponderance of testimony shows the complainant was of age when he signed this release, although he now denies it. It appears that in May, 1879, Julia A. Nadeau and Eli G. Nadeau sold and transferred said land to the defendants Sarah E. Boyles, Charles W. Boyles, Francis M. Boyles, and James M. Boyles, for a valuable consideration, and said deed was recorded on the same day. It further appears that in February, 1882, the Boyles transferred, for a valuable consideration, 15 acres of said land to Eli G. Nadeau, and on or about August 25, 1879, said Nadeau conveyed said 15 acres of land to the defendant Elizabeth Oliver. In April, 1887, Frank M. Boyles and Mary M. Boyles, his wife, made a mortgage, for a valuable consideration, on a portion of said land to the defendant Alexander Adams, which mortgage was duly recorded. On the same day the said Samuel F. Boyles and Nira Boyles, his wife, made a mortgage to the defendant Alexander Adams on another portion of said land, for a valuable consideration, which mortgage was duly recorded. In June, 1893, Frank M. Boyles and Mary M. Boyles, his wife, made a mortgage to Eli G. Nadeau on a part of said land, for a valuable consideration, which mortgage was duly recorded, and on the same day Samuel F. Boyles

and Nira Boyles, his wife, made a mortgage to said Eli G. Nadeau on another portion of said land, which mortgage was duly recorded.

Article 2 of the treaty of 1862 has this provision concerning allotments or assignments of lands to the Indians:

"When such assignments shall have been completed, certificates shall be issued by the commissioner of Indian affairs for the tracts assigned in severalty specifying the names of the individuals to whom they have been assigned respectively, and that said tracts are set apart for the perpetual and exclusive use and benefit of such assignees and their heirs. Until otherwise provided by law, such tracts shall be exempt from levy, taxation or sale, and shall be alienable in fee or leased or otherwise disposed of, only. to the United States, or to persons then being members of the Pottawatomie tribe and of Indian blood, with the permission of the president, and under such regulations as the secretary of the interior shall provide except as may be hereinafter provided."

Article 3 provides as follows:

"At any time hereafter when the president of the United States shall have become satisfied that any adults being males and heads of families, who may be allottees under the provisions of the foregoing article, are sufficiently intelligent and prudent to control their affairs and interests, he may, at the requests of such persons, cause the lands severally held by them to be conveyed to them by patent in fee simple, with power of alienation; and may, at the same time, cause to be paid to them, in cash, or in the bonds of the United States, their proportion of the cash value of the credits of the tribe, principal and interest, then held in trust by the United States, and also, as the same may be received, their proportion of the proceeds of the sale of lands under the provisions of this treaty. And on such patents being issued, and such payments ordered to be made by the president, such competent persons shall cease to be members of said tribe, and shall become citizens of the United States; and thereafter, the lands so patented to them shall be subject to levy, taxation and sale in like manner with the property of other citizens: Provided, that before making any such application to the president, they shall appear in open court in the district court of the United States for the district of Kansas, and make the same proof, and take the same oath of allegiance as is provided by law for the naturalization of aliens, and shall also make proof to the satisfaction of said court that they are sufficiently intelligent and prudent to control their affairs and interests, that they have adopted the habits of civilized life, and have been able to support, for at least five years, themselves and families."

It appears from article 2 of the treaty that an allottee of lands could not alienate the same without the consent of the president, under regulations established by the secretary of the interior. Under article 3, members of the tribe, being adult males, and heads of families, with the consent of the president, and on becoming naturalized before the United States court, by showing their fitness for citizenship, could receive patents for their lands, and their proportion of the annuity fund, and thereafter the land was subject to taxation and sale. Under the treaty of 1867, the rights of the head of a family, on becoming a citizen, were enlarged, he not only receiving patent for his own land, but also the patents for the allottees, who were members of his family, and thereafter said lands were subject to alienation and administration under the laws of Kansas. In the case of allottees dying, patents were issued to the deceased and his heirs, and the land was administered under the laws of Kansas, as before stated. This allottee, in 1871, was represented as deceased, and under that belief his patent was is-

sued, and his land disposed of, not by administration as the estate of a deceased person, but under proceedings of guardianship in the probate court of Shawnee county, Kan., where said land was situated, which was clearly in contravention of the provisions and purposes of the treaty. The secretary of the interior had been induced by deception to issue the patent. It appears from the evidence that the department of the interior has recently been put in possession of all the facts, but declines to either revoke the patent or issue another for the land. As neither the government nor the allottee is seeking to have the patent canceled, it is not likely other parties can object, so the fee to the land passed under the patent to the allottee. U. S. v. Minor, 114 U. S. 243, 5 Sup. Ct. 836. But it does not follow, because a patent had been thus procured, that the patentee took the land free of the restriction on alienation under article 2 of the treaty. Something more was necessary before the lands were alienable. Article 3 provides that the consent of the president shall be obtained, and that the allottee must make certain proof before the United States court of his intelligence and prudence to manage his affairs, and must sever his tribal relations, and become a citizen; and this privilege is given only to adult males, being heads of families. Construing articles 2 and 3 together as pari materia, it will be seen that this Indian boy, 11 years old, whose patent had been obtained by deception, was a long way from being in a position to alienate his land, and what he was disabled by the treaty from doing could not be done by a guardian appointed by the probate court. Wiggan v. Conolly, 16 Sup. Ct. 914. That court was without jurisdiction, and its proceedings were void. U. S. v. Payne, 4 Dill. 389, Fed. Cas. No. 16,014. In this case, Judge Dillon uses the following language:

"Where Indians maintain the tribal relations, their property is not subject to the laws of the state, or their estates to be administered upon in a probate court of the state, unless by assent of the general government"; citing The Kansas Indians, 5 Wall. 737; Mackey v. Coxe, 18 How. 100; Mungosah v. Steinbrook, 3 Dill. 418, Fed. Cas. No. 9,924; Gray v. Coffman, 3 Dill. 393, Fed. Cas. No. 5,714. It will be conceded for the purposes of this case that the senate amendment to article 8 of the treaty of 1867 gave the probate court authority to appoint administrators and settle the estate of deceased allottees of the tribe, but it gave the probate court no authoriy to appoint administrators of an Indian unless he had been an allottee under the treaty, and was dead."

It is contended, because the patent contains on its face no limitation against alienation, that parties dealing with the patentee take the land as bona fide purchasers, relieved of the restrictions on alienation; but defendant Nadeau was an original wrongdoer in this matter, and his grantees are charged with notice of the guardianship proceedings in the probate court. Parties dealing with Indians must take notice of public treaties and acts of congress. Wiggan v. Conolly, supra. In this case, a patent had issued to the allottee, a minor, with restriction of alienation for five years. Afterwards, by treaty, an additional limitation was imposed,—that of minority. Held by the court to apply to a patent already issued, and a guardian could not sell the land. Mr. Justice Brewer, speaking for the court, says:

"The fact that the patent to this allottee had already been issued did not abridge the right of the United States to add, with the consent of the tribe, a new limitation to the power of the individual Indian in respect to alienation. The land and the allottee were both still under the charge and care of the nation and the tribe, and they could agree for still further protection,—a protection which no individual was at liberty to challenge." Taylor v. Brown (Dak.) 40 N. W. 525; Clark v. Libbey, 14 Kan. 435; Eells v. Ross, 12 C. C. A. 205, 64 Fed. 419.

David Laughton maintained his tribal relations with the Pottawatomie Indians until the act of congress of 1887 made him a citizen. 24 Stat. § 6, p. 390. He never made the proofs, or became naturalized, as provided by article 3 of the treaty. Although he attained his majority in 1874, he was disabled from making title to this land until he became a citizen.

The defendants contend that the complainant is barred by laches and estoppel to maintain this suit, and have pleaded the Kansas statutes of limitation. The proceedings before the probate court being void, they could not be cured by ratification or waiver. There being no color of title, the statute of limitation does not apply. There could be no purchaser in good faith under these proceedings. McGannon v. Straightlege, 32 Kan. 524, 4 Pac. 1042; Sheldon v. Donohoe, 40 Kan. 349, 19 Pac. 901; Lindsey v. Miller, 6 Pet. 666. No laches could be imputed to complainant while under disability as a tribal Indian. He and his land were under the control of the government. Wiggan v. Conolly, supra; Eells v. Ross, supra. If any limitation of the Kansas statutes is applicable, it would be the general 15-year statute (subdivision 4, par. 4093); but he brought this suit in seven years after becoming a citizen, so he is within the time prescribed by that statute.

The complainant is entitled to the decree prayed for in his bill.