## PROCEEDINGS TO VACATE JUDGMENTS CLAIMED TO BE INVALID.

Common Pleas Court of Trumbull County.

THE KINSMAN NATIONAL BANK v. JOHN JERKO, ET AL.*

Decided, 1925.

*Confessed Judgment—Authority to Enter Will Be Closely Scrutinized—Will Not Be Recognized Outside of the State of Its Issuance—Not Available to an Endorsee—Modification of Judgments After Term—Motion to Vacate a Judgment not a General Appearance, When—Void Judgments May Be Adjudged Invalid on Motion Without Showing a Meritorious Defense—Void Judgments Incapable of Ratification—Promise of Settlement Does Not Estop Denial of Invalidity of Judgment.*

1. A warrant of attorney authorizing the confession of a judgment is looked upon with disfavor by the courts, and will be strictly construed in favor of the grantor thereof and against the grantee.

2. A warrant of attorney to confess judgment annexed to a note executed, delivered and made payable in the state of Pennsylvania and which reads: "And we hereby authorize any attorney or prothonotary of Mercer county or any other county in this state or elsewhere to enter and confess judgment against us," etc., authorizes the confession of a judgment in the courts of the state of Pennsylvania alone, and a judgment entered by confession against the maker of a note to which such warrant of attorney is annexed in the courts of any other state outside of the state of Pennsylvania is void for want of jurisdiction.

3. A warrant of attorney annexed to a note authorizing the confession of a judgment against the makers thereof, but in favor of no particular person, authorizes the confession of a judgment in favor of the payee of the note alone, and a judgment confessed by virtue of such warrant of attorney in favor of an endorsee of the note is void for want of jurisdiction.

4. A court has the inherent power to vacate or modify its judgments after term for good and sufficient causes other than those specified in Section 11631 of the General Code, the remedies provided in said section being cumulative and not exclusive.

5. A motion filed by a party which disclaims any and all intent of

---

* Affirmed by the Court of Appeals March 5, 1925: Motion to Certify Record overruled by the Supreme Court May 19, 1925.

entering a general appearance, but solely and alone for the purpose of motion, moves the court to vacate a judgment theretofore rendered upon the grounds that at the time of the rendition thereof the court did not have jurisdiction over the party so moving, does not constitute a general appearance nor give the court jurisdiction over the person of the party so moving.

6. Where an attempt is being made to enforce payment of a void judgment, it may be adjudged invalid upon the motion of the judgment debtor without showing a meritorious defense to the action in which the judgment was obtained.

7. A void judgment is incapable of ratification.

8. When it is claimed that one after judgment waived the defect of jurisdiction over his person, it must appear that the waiver thereof was such as would have conferred personal jurisdiction upon the court before the rendition of such judgment.

9. One is not estopped to deny the invalidity of a judgment, void upon its face by reason of his promises to settle made after judgment was obtained, even though it is claimed that the judgment creditor in relying upon such promises of settlement refrained from attempting to enforce the judgment. The judgment being void, it was a mere nullity and of no legal effect and could not be legally enforced.

*Fillius & Fillius* and *H. H. Hoppe,* for defendants.
*G. H. Birrell* for the plaintiff.

WILKINS, J.

This cause is now before the court upon the motion of the defendant John Jerko filed on January 9, 1925, who, disclaiming any and all intent of entering any appearance herein or submitting himself to the jurisdiction of this court but solely and alone for the purpose of the motion, moves the court to vacate the judgment heretofore rendered against him in favor of the plaintiff the Kinsman National Bank upon the grounds that the judgment so rendered is void for the reason that this court had no jurisdiction over him at the time of the rendition thereof.

On the 27th day of June, 1921, the plaintiff the Kinsman National Bank filed its petition in the usual form seeking to recover judgment against the defendants John Jerko and Nick Jerko upon the following promissory note:

$3,553.50. Greenville, Pa., Nov. 15, 1920.

Six months after date we or either of us promise to pay to the order of M. S. Polley three thousand and five hundred fifty-three dollars at the Greenville National Bank, Greenville. Pa. Value received.

And we hereby authorize any attorney or prothonotary of Mercer county, or any other county in this state or elsewhere, to enter and confess judgment against us for the above sum, with cost of suit and attorney's commission of five per cent for collection, release of errors and without stay of execution; and we do waive the right and benefit of any law of this or any other state exempting property, real or personal, for sale, and if levy is made on land, we waive the right of inquisition and consent to the condemnation thereof with full liberty to sell the same on fi fa, with release of errors therein. And we do further waive the right of appeal.

No. 38365. Interest 6% . Due May 15.

Nick Jerko,
John Jerko.

Endorsements:
  Protest waived.
  M. S. Polley.
  Protest waived.
  Smith & Holcomb.
Revenue stamps, 72 cents.

On the same day one W. B. Kilpatrick, an attorney of the local bar, filed an answer on behalf of Nick Jerko and John Jerko, which answer sets forth that the same was filed by virtue of the warrant of attorney annexed to and mentioned in the note set forth in plaintiff's petition. This answer was in the ordinary form filed by attorneys when confessing judgment by virtue of a warrant of attorney contained in a note, and confessed judgment against the defendants John Jerko and Nick Jerko in favor of the Kinsman National Bank for the sum of $3,684.98. It is admitted that W. B. Kilpatrick had no authority to file this answer on behalf of the defendants other than that contained in the warrant of attorney. On the same day judgment was rendered upon the strength of the foregoing answer in favor of the Kinsman National Bank and against John Jerko and Nick Jerko for $3,684.98, the journal entry reciting that W. B. Kilpatrick appeared in

court on behalf of the defendants Nick Jerko and John Jerko by virtue of the warrant of attorney annexed to the note set forth in plaintiff's petition. Execution was issued in an effort to collect this judgment and returned unsatisfied. Thereafter several proceedings in aid of execution were had and the defendant John Jerko pursuant to subpoenas appeared before a referee appointed by the court to take testimony, at some of which hearings his testimony was taken, at others of which the hearing or taking of testimony was continued at the request of John Jerko who promised settlement.

In June, of 1922, another execution was issued to collect the judgment and a levy was made upon certain property of John Jerko and he thereupon filed suit in this court to enjoin the collection of the judgment rendered in this cause and secured an injunction restraining the Kinsman National Bank and the Sheriff of Trumbull County from proceeding to collect the same upon the grounds that the judgment was void. This court at that time found in the injunction proceeding that the judgment was void and upon appeal to the Court of Appeals of Trumbull County this judgment was affirmed. Thereupon error was prosecuted to the Supreme Court of Ohio, which court on the 23d day of December, 1924, dissolved the injunction and dismissed the petition of John Jerko, a majority of the Supreme Court being of the opinion that it was immaterial whether the judgment rendered in this cause was void or voidable inasmuch as in their opinion John Jerko was not entitled to equitable relief. A minority of the court were of the opinion that the judgment was void and that the lower courts should have been affirmed. (*Kinsman National Bank* v. *Jerko,* 111 O. S., 511). Thereupon the plaintiff in this cause the Kinsman National Bank issued another execution to collect the judgment hereinbefore rendered and the defendant John Jerko filed the motion that is now before the court to vacate the same.

It is contended on behalf of the defendant John Jerko that the judgment hereinbefore rendered is void, first because the warrant of attorney annexed to the note did not authorize the confession of a judgment in any court outside of the state of

Pennsylvania, and second, because it did not authorize the confession of a judgment in favor of any one other than the payee of the note.

It is to be noted that the note sued upon is made payable to one M. S. Polley and bears the endorsement:

"Protest waived—M. S. Polley.
Protest waived—Smith & Holcomb."

so that the present plaintiff the Kinsman National Bank is an endorsee and not the payee.

It is likewise to be noted that the note sued upon was executed, delivered and made payable in the state of Pennsylvania and that the warrant of attorney authorizes any attorney or prothonotary of Mercer county or any other county in this state or elsewhere to confess judgment etc. This authorization is clearly limited to the courts of Pennsylvania unless effect can be given to the words "or elsewhere." The word "elsewhere" in its broadest sense would include any court in the world and certainly that could not have been the intention of the makers of the note. We have no such officer as a prothonotary in this state and that would tend to indicate that the parties intended that a judgment by confession could only be taken in a state having such an officer.

Warrants of attorney to confess judgment have always been, and rightly so, looked upon with disfavor and the courts have at all times placed a strict construction thereon. Our Supreme Court in the case of *Cushman* v. *Welsh*, 19 O. S., 536, says:

"A warrant of attorney to confess judgment must be strictly construed and the authority thereby conferred cannot be exercised beyond the limits expressed in the instrument."

In the case of *Bank* v. *St. John*, 5 Hill (N. Y.), 497: Two residents of the state of Pennsylvania and one a resident of New Jersey executed in Pennsylvania a promissory note with warrant of attorney annexed which read "to John D. Smith, Esq., attorney of the Court of Common Pleas of Philadelphia, in the county of Philadelphia, in the state of Pennsylvania, and to any other attorney of said court or of any other

court there or elsewhere, or to any prothonotary of any of the said courts," the court says on page 500:

"The only thing which can carry the power beyond the courts 'at Philadelphia' is the word 'elsewhere'; and although if the parties had stopped there the authority might have extended to our courts, the scope of the word 'elsewhere' is restricted by the words which immediately follow it—'or to any prothonotary of any of the said courts.' This shows that the parties were speaking of such courts as had an officer called a 'prothonotary,' and such courts only. The Pennsylvania courts have an officer of that name, but we have not. How it may be in New Jersey, where one of the obligors resides, I am unable to say. We think the warrant does not authorize the confession of a judgment in this state."

In *Carlin* v. *Taylor*, 75 Tennessee, 666: A resident of the state of Tennessee executed and delivered in the state of Pennsylvania a promissory note with warrant of attorney annexed which reads as follows: "I hereby empower any attorney of record within the United States or elsewhere to appear for me and confess judgment, etc." This note was reduced to judgment by confession in the Court of Common Pleas of Washington county, Ohio, and suit was then filed upon the same in the Circuit Court of Hamilton county, Tennessee. In speaking of the warrant of attorney annexed to this note and in refusing to give full faith and credit to the judgment so recovered in the state of Ohio, the Supreme Court of Tennessee in its syllabus says:

"1. *Power of Attorney.* Void for uncertainty. To a promissory note a power of attorney was annexed, empowering 'any attorney of record within the United States or elsewhere to appear for me and confess judgment against me as of any term for above sum and five per cent. attorney's fees.' *Held,* void for uncertainty.

"2. *Pleadings and Practice.* Judgment from another state. *Nul tiel* record. One suing upon a judgment of a court of a foreign state which would not be valid if rendered in the state where it is offered in evidence, must show that it is valid according to the laws of the state where it was pronounced. A judgment pronounced in Ohio upon a power of attorney to confess judgment executed in Pennsylvania against a per-

son resident in Tennessee, without personal or constructive service of process, is void and *nul tiel* record is a good plea to an action thereon in this state.''

In *Davis* v. *Packer*, 8 O. C. C., 107, where the validity of a warrant of attorney to confess judgment' contained in a note ,executed and delivered in Chicago, Illinois, and made payable there, was up before the Circuit Court of Hamilton county, the court in its syllabus says:

''The court of common pleas had no jurisdiction to render judgment, without notice to defendants, upon a warrant of attorney to confess judgment upon a note, the note and war- rant being executed in Illinois, and authorizing the attorney to appear in 'any court of record,' and confess judgment without process.

''The terms of such warrant, authorizing, as they appear to do, a confession of judgment, in any court in the world, are too general in their nature, and do not authorize such judgment in the state of Ohio.''

In *McClure* v. *Bowles*, 5 O. N. P., 327, wherein the warrant of attorney annexed to a note read ''any court of record in the state of Ohio or elsewhere,'' the court, at the bottom of page 328, says:

''Secondly, it is urged that the phrase 'any court of record in the state of Ohio or elsewhere,' is void for the like reason, that is to say, for uncertainty; upon this point it is to be remembered that judgment was obtained, not 'elsewhere,' but within the state of Ohio, within the county of plaintiffs' resi- dence, and within the county where the note was made; so that the question is upon the sufficiency of the language to authorize judgment in this particular court of Ohio, and is not upon the point of whether a court 'elsewhere' could have acquired jurisdiction. It must needs be said that the parties contemplated, at least, a confession of' judgment in the court of jurisdiction over the place of the maker's residence, when that place is co-incident with the place where the note was made, that the makers so intended must be presumed.

''Upon this proposition the books seem to point out that though the language employed to designate the court were even more general than at bar, yet judgment would be good in some cases; that is to say, if a note authorized 'judg- ment in 'any court of record' without specific mention of one

state or another, I take it that judgment without the state wherein the note was given would be void; upon the ground that the parties must be said to have had in mind only the courts of that particular state wherein they happened to be: but that a judgment obtained within that state would be held a good judgment for the same reason.

In the latter case the note was made, executed and delivered in the state of Ohio and reduced to judgment there, and the court held that such judgment was valid, but clearly recognized that the word "elsewhere" could not confer jurisdiction upon any court outside of the state of Ohio.

In view of the above authorities and the holdings of our courts that warrants of attorney must be strictly construed and cannot be exercised beyond the limits expressed in the instrument, it is clear that the warrant of attorney annexed to the note in this case did not authorize the confession of a judgment in any court outside of the courts of the state of Pennsylvania. The word "elsewhere" can be given no effect under the rule of strict construction for it cannot be presumed that by the use thereof the makers of the note intended that a judgment could be confessed against them in any court of record at any place in the world.

Even though this were not true, it is to be noted that the warrant of attorney does not authorize the confession of a judgment in favor of any particular person and this raises the question as to whether or not the authorization to confess judgment would pass with the instrument and authorize the confession of a judgment in favor of any holder thereof.

This court has had before it in the past a number of cases in which the payee, named in a cognovit note such as this but not with the same warrant of attorney but one which unquestionably was valid in this state, died and the court has held in each instance that the personal representative of the payee could not take advantage of the warrant of attorney but that jurisdiction over the defendant could only be acquired by either the issuing of summons or the voluntary appearance of the defendant. No one has seemingly seriously questioned the correctness of this holding.

In *Osborn* v. *Hawley,* 19 O., 130, the court in its syllabus says:

"A power of attorney to confess judgment attached to a note, and forming a part of the same instrument, does not destroy the negotiability of the note.

"Such power of attorney is not negotiable and when the note is transferred, becomes invalid and inoperative."

In *Marsden* v. *Soper,* 11 O. S., 503, at 505, the court says:

"It will be noticed that the plaintiff in this judgment is not the payee of the note on which judgment is taken, but an endorsee; and that the warrant of attorney under which judgment was confessed, purports to authorize such confession 'in favor of any holder of this obligation,' after the same becomes due. But, it was held, in broad and general terms, in the case of *Osborn* v. *Hawley,* 19 Ohio Rep., 130, that a warrant of attorney to confess judgment, attached to a note, and forming a part of the same instrument, is not negotiable, and when the note is transferred, becomes invalid and inoperative. It is true, the report of that case does not inform us whether the warrant of attorney in that case purported to authorize the confession of a judgment in favor of the payee of the note alone, or whether its terms extended, as in this case, to any holder of the note after due. But, however this may have been in that case, we suppose that, if this judgment rested upon the confession under the warrant of attorney alone, it would be very questionable whether the court of common pleas had any rightful jurisdiction of the defendants in the judgment."

In *Cushman* v. *Welsh,* 19 O. S., 536, the court in the second and third syllabus, says:

"2. A warrant of attorney to confess judgment must be strictly construed, and the authority thereby conferred cannot be exercised beyond the limits expressed in the instrument.

"3. A warrant of attorney attached to such sealed note or bill, authorizing a judgment to be confessed thereon 'in favor of the legal holder' thereof, does not authorize a confession of judgment on such note in favor of the owner and holder thereof, without an endorsement thereon by the payee transferring the legal title to such owner and holder of the note."

In *Spence* v. *Emerine,* 46 O. S., 433, where the warrant of

attorney annexed to a note failed to designate any particular person in whose favor judgment might be entered, as does the warrant of atorney in the case at bar, the court at the bottom of page 439 and top of page 440 says:

"The plaintiff in error, in executing the note, might .be presumed to have authorized an attorney to enter up a judgment against him in favor of the payee, when he would not be presumed to have consented to stand in the relation of judgment debtor to a stranger or adverse holder, to whom the payee might endorse or deliver the note. The maker might well insist upon a strict construction of the power granted, when the payee, by transferring the note before maturity, might preclude a defense which he might have at maturity. The power of attorney attached to the note in controversy, does not, in express language, authorize a confession of judgment in favor of any one, not even of the payee; but if such authority might be implied as to the payee, we cannot, under the rule of a strict interpretation, extend that implication in favor of the defendant in error to whom the note was transferred by delivery."

Again in *Watson* v. *Paine*, 25 O. S., 340, the court on page 346 says:

"I know of no decided case in which the doctrine contended for by plaintiffs in error has been recognized. In *Osborne* v. *Hawley,* 19 Ohio, 130, it does not appear that the warrant by its terms authorized the confession in favor of any holder other than the payee. If the power was so limited in that case, the decision was clearly right, if it was not so limited, then the authority of that case has already been doubted in *Marsden* v. *Soper*, 11 Ohio St., 503."

In the case at bar the warrant by its terms authorizes the confession of a judgment in favor of no one unless by implication as set forth in the case of *Spence* v. *Emerine, supra,* it includes the payee alone.

In *Bank* v. *Post,* 22 O. C. C., 644, affirmed 54 O. S., 629, the court in its fourth syllabus says:

"4. Cognovit notes should be very strictly construed and under the warrant of attorney to confess judgment, a judgment can be rendered only against the persons designated. Thus, on such a note signed 'Wickham & Co., H. C. Post, Geo. E. St. John,' a judgment against individuals composing the

firm of Wickham & Co. on the strength of allegations in a petition, is unauthorized; and the same is true of a judgment against 'Halsey C. Post.' A judgment against 'George E. St. John,' under the note in question, signed 'Geo. E. St. John,' is not invalid, but a judgment in favor of 'The Farmers' National Bank of Mansfield, Ohio,' on a cognovit note running to 'The Farmers' National Bank' is irregular and void."

From the above authorities it is clear to the court that even though any effect could be given to the use of the word "elsewhere," nevertheless the judgment recovered in this case must be held to be void by reason of the fact that it did not authorize the confession of a judgment in favor of any one and while such authority might by implication be construed to include the payee of the note, it cannot under the doctrine of strict construction be construed to include a subsequent holder thereof. This court is therefore of the opinion that the judgment heretofore rendered is void.

It is contended, however, by counsel for plaintiff that the term at which this court rendered its former judgment having expired, the court cannot vacate or modify it except as provided for in Section 11631 et seq. of the Code; that the time within which a court can modify its judgments after term pursuant to Section 11631 as set forth in Section 11640, has expired in this case; that the defendant John Jerko has offered no defense to the collection of the note as required by Section 11637 and that consequently whether the judgment complained of is void or not, the motion to vacate the same must be denied. In support of his contention counsel for plaintiff argues that the jurisdiction of the court of common pleas under Section 4, Article 4 of the Constitution is such only as is fixed by law and that Section 11631 of the code being the only legislative authority to vacate judgments after term, this court has no jurisdiction to vacate a judgment after term except as therein provided. With this the court cannot agree.

It is to be noted that no remedy is provided for in Section 11631 for the vacation after term of a void judgment. Moreover paragraph 4 of Section 11631 provides for the vaca-

tion of a judgment after term when the judgment was procured by fraud. To set aside a judgment procured by the fraud of the successful party one may proceed in the manner specified in the code or by independent action in equity. *Bank* v. *Mullen*, 7 N. P. (N. S.), 313; *Coates* v. *Bank*, 23 O. S., 415; *Darst* v. *Phillips*, 41 O. S., 514. True it is that the court in these cases exercised jurisdiction because of the fraud involved, but if the provisions of Section 11631 provided the exclusive remedies, then they had no right to entertain jurisdiction. The fact that they did so shows that the courts of this state have always considered the remedies provided for in Section 11631 as cumulative and not exclusive and that a court has the inherent power to set aside its own judgments after term upon grounds other than those specified therein.

Our Supreme Court in *Bennett* v. *Fleming*, 105 O. S., 352, in speaking of the remedies provided for in paragraphs 5 and 8 of Section 11631, being remedies other than for fraud, says in its first syllabus:

"The code provisions of paragraphs 5 and 8 of Section 11631, General Code, Section 11603, General Code, and Section 12270, General Code, are cumulative and in addition to the right of an infant to impeach a judgment for fraud after arriving at majority, and such a cause based upon proper grounds can be prosecuted by original suit begun in the court where the decree complained of was entered."

The author in 34 C. J. Section 437, says:

"At common law, and in the absence of statute changing the rule, jurisdiction over the cause ceased with the expiration of the term at which final judgment was rendered, and thereafter the court has no power to correct or amend the judgment and a fortiori the court has no power after expiration of the term to open or vacate the judgment, except in either case pursuant to proceedings begun within the proper time and continued to the subsequent term; in such cases the proceedings remain *in fieri*, and the court may open, amend or vacate the judgment at the subsequent term. The only remedy after the term for irregular and erroneous, as distinguished from void, judgments is usually by new trial, review, writ of error, or appeal, as either may be appropriate and allowable by law, or by some other mode specially provided by statute."

As to void judgments the author says in Section 439:

"Where a judgment is entirely void for want of jurisdic·tion, the power to vacate it or set it aside is not limited to the term at which it was rendered, but may be exercised at a succeeding term, subject to any existing statutory provision. But a judgment of a court of last resort cannot be set aside after the term on the ground that the court had no jurisdiction."

As to the effect of statutory provisions the author in Section 445 says:

"Statutes conferring power to amend, open, or vacate judgments, and regulating to a greater or less extent the time within, and the grounds upon, which such power may be exercised exist in the several jurisdictions, and govern all cases falling within their provisions, in accordance with the rules already stated. Some such statutes do not affect the inherent power and control of the court over its judgments. Other statutes do. In cases not within the statute, the common-law rules prevail. Such statutes are remedial and should be liberally construed, although they cannot be extended beyond their legitimate purport."

And again in Section 492 we find the following:

"Invalidity of the judgment for want of jurisdiction either of the person or of the subject matter, or of the question determined and to give the particular relief granted, rendering the judgment void, as distinguished from merely voidable, or erroneous, is ground for vacating it, at any time before or after expiration of the term at which it was rendered, with·out limitation of time other than such as may be expressly prescribed by statute. Any applicatory statutes are of course controlling. The existence of a valid or meritorious defense to the action is not a condition of relief in this class of cases."

In 17 Ency. of L. (2d ed.), 825, it is said:

"A court may, at any time, vacate or set aside a judgment which is void, as, for example, a judgment rendered where there was a lack of the necessary jurisdiction, whether through omission or defect of service or otherwise."

In *Thomas* v. *Company*, 47 Fed., 560, the court said:

"A judgment rendered by a court of law which is a nullity

may be set aside by the court on motion even at a subsequent term.''

In *People* v. *Temple,* 37 Pac., 414, the court said:

''A judgment void on its face may be set aside on motion at any time.''

In *People* v. *Davis,* 77 Pac., 651, the court said:

''A court may vacate ,a judgment or order void upon its face after any lapse of time regardless of the want of any motion for such action.''
''Neither the failure on the part of the party to appeal from an order void on its face nor lapse of .time can make such order valid or impair the power of the court to formally vacate it on its own motion and without notice.''

In *Chambler* v. *Cole,* 30 So., 630, the court said:

''Every court has the inherent power to vacate its void. decree even at a subsequent term, and should do so on motion, but if valid its power to alter is limited to the correction of errors and omissions apparent upon the record.''

The courts of Nebraska, in construing their code which was adopted from ours, have universally followed the construction which the courts of Ohio have placed upon the Ohio Code and so we might with equal propriety follow the construction which the Supreme Court of that state places upon Sections of their code which have not been construed by our courts.

In *Kauffman* v. *Drexel,* 56 Neb., 229, 76 N. W., 559, the court says:

''Section 602 of the Code of Civil Procedure has reference only to judgments and orders possessing some degree of legal vitality, and not to such as are absolutely void.''
In *Commissioner* v. *Robbins,* 53 Neb., 44, 73 N. W., 269, the court says:

''In this connection we deem it proper to say we do not think that the provisions of Section 602 of the code contemplate a void judgment, but one which is voidable by reason of some fraud or irregularity.'' ·

In *Gutterson* v. *Meyer,* 68 Neb., 767, 94 N. W., 969, the court says:

"The provisions of Section 602, Code of Civ. Proc., apply to voidable but not to void judgments."

Numerous authorities to the same effect could well be cited. They establish the law beyond question. If one desires to vacate a judgment after term upon any one of the grounds enumerated in Section 11631 of the Code, he must do so, except when proceeding upon the grounds of fraud, in the manner and within the time specified in Chapter 6, Division IV of the Code. When proceeding upon the grounds of fraud, he may proceed, either under the code, or by an independent suit in equity, for the reason that equity courts will not be deprived of a jurisdiction which they exercised before there was an adequate remedy at law by the subsequent granting of such a legal remedy. But the remedies provided for in Section 11631 for vacating or modifying a judgment after term are not exclusive. A court has the inherent power to vacate or modify its judgments after term for good and sufficient causes other than those specified in the code. At common law a court other than an equity court had no right to vacate or modify a judgment after term upon any of the grounds enumerated in Section 11631, but it did after term have the right to vacate upon its own motion if it so saw fit judgments which were void for lack of jurisdiction of the parties or subject matter. There being no remedy provided for by the code for the vacation of a void judgment, it follows that the common law prevails.

It is further contended, however, by counsel for plaintiff that this court should not vacate the judgment heretofore rendered for the reason that the defendant has offered no defense thereto, that this court acquired jurisdiction over him by his appearance before a referee appointed to take testimony in aid of execution proceedings, his promises of settlement made to counsel for plaintiff both before and after taking judgment, which promises and appearances counsel contends was a ratification of the judgment.

As to the necessity of showing a meritorious defense, the court in *Green* v. *Railway Company*, 62 O. S., 67, says:

"Where an attempt is made to enforce payment of a void

judgment it may be adjudged invalid without showing a defense to the action."

In *Kingborough* v. *Tousley*, 56 O. S., 450, the court in passing upon the question of pleading a good defense to a void judgment before securing its vacation, said at page 462:

"Nor is it material in such case to inquire whether the defendant could have made any valid defense, if he had been summoned."

In *Bailey* v. *Young*, 20 O. C. C., 546, the court said:

"Where in an action for the foreclosure of a chattel mortgage, without asking for a personal judgment, the defendant fails to answer within the time fixed in the summons served on him, he is in court only up to the answer day so fixed as to the parties who brought him in, and only to the matters pertaining to such foreclosure. And where a co-defendant, after the answer day so fixed in such summons, files a cross-petition against such defendant asking for a personal judgment on his claim, but fails to have a summons on his cross-petition served on such defendant, who does not appear, a judgment taken against defendant on such cross-petition is void, and such defendant may attack its validity without being required to set up any defenses if any he has against such co-defendant's claim."

In *Worrall* v. *Chase & Company*, 123 N. W., 338, at 430, the court says:

"When carefully examined, it will be seen that the doctrine of the cases relied upon by the appellants is that when the judgment defendant admits, or it appears without contradiction, that the debt represented by the void judgment is just and unpaid, equity will not lend him its aid to reopen the case or set aside the attempted adjudication, and to such rule there can be no serious objection; but to extend it farther, and say that one claiming to be the creditor of another, may by the expedient of obtaining a void judgment cast upon the debtor the burden of showing that he does not owe the alleged debt, would be subversive to all sound principles of justice and orderly procedure."

In *Cremer* v. *Michelet*, 131 N. W., 627, at 628, the court says:

"By these decisions the law is clearly settled in this state that, as to judgments obtained in suits where jurisdiction of a party was acquired, such party cannot thereafter institute a separate suit to vacate the judgment, if the relief sought can be obtained by direct application under the statute, except as to judgments procured by fraud; and this for the sufficient reason that, jurisdiction of the party having been acquired in the first suit, he is required to make his defense and obtain his relief, if possible, through a direct application to the court in which the judgment was entered. On the other hand, as to judgments entered in suits where no jurisdiction was acquired, the remedies by a suit to vacate the judgment, or by a direct application under the statute, are cumulative. In such case, jurisdiction of the person never having been acquired in the original suit, he is not bound to make his defense or seek his relief by direct application under the statute to the court in which the judgment was entered."

Indeed any other rule of law would be unsound. A judgment could be rendered by a court having no jurisdiction over the subject matter—such for example as this court issuing a writ of prohibition or a justice of the peace issuing a decree of specific performance of a land contract—or judgment could be obtained without service of summons—and to require a defendant to show a defense to such judgments before being able to have them set aside seems preposterous.

Upon the question of the jurisdiction of this court over the person of the defendant it is sufficient to say that personal jurisdiction is acquired only by service of summons or voluntary appearance. No summons was ever issued in this case. The defendant was never served with process. His promises to plaintiff's counsel to settle both before and after judgment was obtained can in no wise be construed as a voluntary appearance in this action. The appearance of the defendant before the referee in the aid of execution proceedings were pursuant to subpoenas issued by this court. They were involuntary and not voluntary. The only appearance in this cause of the defendant is the present motion now under consideration in which he expressly disclaims any intent of entering his appearance and the filing of such a motion has never been held to confer jurisdiction for any other purpose than that of the motion.

It is further contended on behalf of the plaintiff that the defendant by his conduct has ratified or waived or is estopped to deny the validity of the judgment, in that the defendant upon being advised that a judgment would be taken if payment was not forthcoming, promised to settle, and then mortgaged his personal property for $8,000, and that after judgment was obtained he made further promises of settlement. Certainly his conduct prior to the time of taking judgment could not be construed as a ratification or waiver nor estop him from denying the validity of something that thereafter happened. There is no claim that the mortgage was fraudulent or given with the intent to defeat collection by the bank of its claim. It is merely stated that the mortgage was given and there is no law which forbids a debtor from changing the form of his assets so long as he does so for a present consideration and with no intent to defeat or defraud his creditors.

Does the mere fact that the defendant promised to settle after the judgment was obtained amount to a ratification, waiver or estoppel? Anything which is void is a mere nullity—it has no legal effect whatever and in the opinion of this court is incapable of ratification.

In *Laughton* v. *Nadeau*, 75 Fed., 789, the court in the fourth paragraph of its syllabus says:

"Proceedings void for want of jurisdiction cannot be cured by ratification or waiver."

In *Oklahoma Oil Co.* v. *Bartlett*, 236 Fed., 488, at 494, it is said:

"The proceedings before the county court of Hughes County, Okl., were void and could not be cured by ratification or waiver."

In Black on Judgments, 2d Ed., Vol. I, Section 218 at page 328, we find the following:

"It has been held that a void judgment may be accepted as valid by the consent of the parties, so the rights of third persons be not prejudiced. 'All the parties interested may lawfully agree to confirm an invalid transcript, or nugatory

judgment, provided the confirmation is to be efficacious, and give a lien, only from the time of the agreement properly appearing.' But other authorities maintain that proceed-ings void for want of jurisdiction cannot be cured by ratifi-cation or waiver. And it is clear that a void judgment cannot be validated by citing the party against whom it was entered to show cause why it should not be declared valid, nor by the court's approval of a sale on execution under it, nor by the subsequent taking and dismissing of an appeal from such judgment. And a void judgment does not fall within the class of subjects upon which a legislature may operate retroactively by a curative or confirmatory stat-ute.''

As to the question of waiver there are numerous ways by which a court can acquire jurisdiction over the person of a party. This can be done by service of summons, or by an acknowledgment endorsed by a party on the summons or peti-tion. by a waiver of service of summons or by a plea upon the merits. Where jurisdiction is not acquired in any of these ways, but it is claimed that the failure to do so has been waived, then it is the opinion of this court that it must appear that the claimed waiver is such as would have at the outset conferred jurisdiction. In the case at bar there is no such proof.

In *Andrews* v. *Sheehy*, 51 So., 122, the court in its second and third syllabus said:

''In facts that a nonresident for whom a curator *ad hoc* has been appointed is present at the trial and is placed on the stand as a witness are irrelevant, as affecting the juris-diction of the court, *ratione personae;* and testimony to show that he knew that a personal judgment would be rendered against him would be inadmissible as such judgment could legally be rendered only after citation, the want of which is not supplied by knowledge of the existence of a suit.

'' A defendant may waive his right to citation by appear-ing in the case for any other purpose than to plead the want thereof; and he may acquiesce in a judgment, illegally ren-dered, by voluntarily executing it, or by permitting it to be executed, he being in the parish where the execution takes place. But a promise to pay the amount of a judgment is not such acquiescence.''

Upon the question of estoppel it is elementary that the party- claiming the same must show that he relied and acted upon the other party's course of conduct or statement and that in relying or acting thereon, he was damaged. The conduct of the defendant in promising·settlement and mortgaging his property before judgment could not estop him from .denying the validity of the judgment after it was obtained. His promise of settlement after judgment, whether it was to pay the judment in full or part, was not accepted and so far as the record shows was not' relied upon for there were several proceedings in aid of execution that followed closely the rendition of the judgment and continued for almost a year. And even if they were relied upon, the plaintiff could in no wise have been damaged thereby. The plaintiff secured no rights whatever by its void judgment, and consequently could not have been prejudiced by failing to prosecute some pretended rights in relying upon the defendant's promises of settlement Counsel for plaintiff argues that in reliance upon defendant's promises of settlement plaintiff refrained from prosecuting its legal rights to collect the judgment. But this argument is without merit for the judgment being void it was a mere nullity and of no legal effect. It gave rise to no legal rights by which it could be enforced. As is said in Black on Judgments, 2d ed., Vol. 1, Section 170, page 248:

"Now a 'void' judgment is in reality no judgment at all. It is a mere nullity. It is attended by none of the consequences ·of a valid adjudication, nor is it entitled to the respect accorded to one. It can neither affect, impair, nor create rights. As to the person against whom it professes to be rendered, it binds him in no degree whatever, it has no effect as a lien upon his property, it does not raise an estoppel against him. As to the person in whose favor it professes to be, it places him in no better position than he occupied before; it gives him no new right, but an attempt to enforce it will place him in peril. As to third persons, it can neither be a source of title nor an impediment in the way of enforcing their claims. *It is not necessary to ̇ take any steps to have it reversed, vacated, or set aside. But whenever it is brought up against the party,. he may assail its pretensions and show its worthlessness. It is supported by no presumptions, and may be impeached in any action, direct or collateral.*"

The last contention of counsel for plaintiff is that the defendant's motion ought to be overruled because of his laches. The judgment was obtained on June 27, 1921, and nothing was done by the defendant to have it vacated or set aside until June 15, 1922, one day after his property was seized on execution at which time he instituted proceedings to have it enjoined. In this he was successful in both the common pleas court and the court of appeals. The supreme court on December 23, 1924, reversed the judgments of the lower courts and dismissed his petition. On January 9, 1925, two days after his property was again seized on execution he filed his motion which is now before the court. Under these facts no laches could be imputed to the defendant unless it would be due to the fact that he waited from on or about July 1, 1921, the day upon which he first knew that judgment had been obtained, to June 15, 1922, before taking active steps to have it vacated. But the judgment being void and of no legal effect, this court is unable to see how any legal effect can be given to his disregard of that which in legal contemplation never existed.

In *Elliot* v. *Peirsol,* 1 Pet., 328, at 340, 7 L. Ed., 164, the Supreme Court of the United States said:

"Where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable but simply void, and form no bar to a recovery sought, even prior to a reversal, in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences are considered in law as trespassers."

It seems to this court that no duty whatever devolves upon one against whom a judgment void upon its face has been obtained to take steps to set it aside or have it vacated. But he may attack its validity at any time its enforcement is attempted no matter what period of time may elapse between its rendition and the attack thereon.

It follows that defendant's motion must be sustained.